No. 94-289

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

DANIEL G. BRADSHAW,

     Petitioner and Respondent,

  -v-

MICHELLE NORICK BRADSHAW,

     Respondent and Appellant.

FILED

MAR 09 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       Laurence J. Ginnings, Missoula, Montana

     For Respondent:

       John C. Schulte, Missoula, Montana

Submitted on Briefs: December 8, 1994

Decided: March 9, 1995

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal and a cross-appeal from the Findings of Fact, Conclusions of Law and Final Decree of Dissolution of the Fourth Judicial District Court, Missoula County. We affirm in part and reverse and remand in part.

The following are issues on appeal and cross-appeal:

APPEAL ISSUES

I. Did the District Court err in awarding the wife $6,000 equity in the house?

II. Did the District Court err in ordering the husband to pay for the wife's future dental expenses associated with tooth repair?

III. Did the District Court err in ordering the husband to undergo and pay for counseling as a condition of exercising unsupervised visitation?

IV. Did the District Court err when it refused to award the husband a variance from child support for the court-ordered counseling?

CROSS-APPEAL ISSUES

I. Did the District Court err in granting grandparent visitation when there was no petition by the grandparents for such visitation?

II. Did the District Court err when it did not order that the beneficiary of the husband's annuity be the child?

III. Did the District Court err in not awarding the wife maintenance?

IV. Did the District Court err in not awarding the wife a

higher share of the equity in the house?

V. Did the District Court err in not awarding the wife attorney's fees?

FACTUAL AND PROCEDURAL BACKGROUND

Daniel G. Bradshaw (Daniel) and Michelle Norick Bradshaw (Michelle) were married in Missoula, Montana on September 2, 1992, and they were separated in early February, 1993. Daniel and Michelle have one child, Daniel Richard Bradshaw, (Danny), who was born on June 17, 1992.

Daniel's petition for dissolution came on for hearing on August 27, 1993, and September 1, 1993, before Susan P. Leaphart, a Special Master. The Special Master filed her Recommended Findings of Fact, Conclusions of Law and Opinion on September 17, 1993. The District Court adopted the Special Master's recommendations with a few minor changes on January 13, 1994, with an Order regarding Objections to the Special Master's Findings of Fact and Conclusions of Law and Final Decree of Dissolution. The following factual information comes from the Special Master's Findings:

Daniel suffers from serious physical impairments sustained in a head injury when he was 15 years old. He also has a learning disability which causes problems in processing information and communicating orally and in writing. Michelle is able-bodied and in good health.

Daniel's physical and mental impairments impede his ability to obtain employment and his options seem to be manual labor positions

3

such as dishwashing and custodial work, positions which he has held in the past. At the time of the dissolution he was unemployed and receiving unemployment benefits of $103 which were about to expire.

Also about the time of the dissolution, Michelle, who had been unemployed, was hired by a health care facility for $5.10 per hour with an increase to $5.60 per hour when she receives her Nurse's Aide certification. Immediately prior to her hiring at the health care facility, she was receiving $310 per month in general assistance and $161 per month in food stamps.

Daniel received a structured settlement due to his head injury and receives a monthly annuity of $1,200.00, which increases by four percent annually, and a lump sum of $2,500.00 in July of each year which increases by three percent annually.

Daniel's major asset is the home at 2300 Woodcock in Missoula, which he purchased on December 7, 1989, for $48,000, paying $16,000 as a down payment. He purchased the home with funds from his personal injury settlement. Daniel has paid all mortgage payments, taxes and insurance payments associated with the home. Michelle has not contributed in any meaningful way, either economically or non-economically, to the value of the home. The increase in value of the house is due entirely to the inflation of home values in the Missoula area. An expert valued the home at $64,000 at the time of the dissolution.

Michelle has been Danny's primary caregiver and Daniel has cared for Danny for only a few brief time periods. Although Daniel and Danny have an affectionate relationship, Daniel's disabilities

4

prevent him from adequately parenting Danny on a full-time basis. The social worker who performed the custody assessment recommended that Daniel be granted reasonable supervised visitation while Michelle should be designated as the primary custodial parent.

The social worker recommended supervised visitation until such time as Daniel completes a Child Abuse Potential Inventory, an Adult Parent Inventory, and counseling which offers training and education in child development and parenting skills. Moreover, the social worker recommended that Daniel receive counseling with a therapist trained in working with head injury victims. Periods of depression and violent outbursts concerned the social worker as they may affect Daniel's parenting of his son. Unsupervised visitation may be appropriate upon completion of the above mentioned programs **and** a recommendation by Daniel's primary treating therapist.

The social worker also recommended that Michelle continue in counseling with her therapist and that she attend educational counseling with Daniel's therapist regarding head injuries. The social worker also suggested that the entire family be monitored by a case manager for 12 months.

The social worker also testified that it would be in Danny's best interests if Daniel's parents, who live in Libby, could exercise visitation. This practice would be contingent upon Daniel's parents signing an agreement that Danny would never be left alone with Daniel on any of the visits. Daniel's mother has stated that she would be agreeable to such an agreement and that

5

the paternal grandparents would provide Danny's transportation on such visits.

Daniel had the following expenses at the time of the dissolution:

1. Rent - $100.00 per month.
2. Purchase or mortgage payments and taxes - $360.27 per month
3. Utilities - $50.00 per month
4. Food - $175 per month
5. Transportation - $150 per month
6. Insurance - $275 every 3 months
7. Recreation - $25.00 per month
8. Other regular or extraordinary expense - $225.00 per month
9. Water - $20.00 per month
10. Montana Power Company - $75.00 per month
11. Telephone - $100.00 per month
12. Chapter 13 payments - $200.00 per month
13. Repair to truck - $2400.00

TOTAL - $1347.27 PER MONTH

Michelle had the following expenses at the time of the dissolution:

1. Doctor bills - $25.00 per month (until $130 balance is paid)
2. Telephone - $16.00 to 19.00 per month
3. Garbage - $11.00 per month ($40.00 owing)
4. Gas - $100.00 per month
5. Clothing for Danny - $200.00 per month
6. Personal bills - minimum of $50.00 per month
7. Repair to tooth - total approximately $3000.00

TOTAL - $405.00 PER MONTH

The monthly totals do not include the costs of repairing Michelle's tooth or Daniel's truck. The parties filed bankruptcy and Daniel has been making Chapter 13 payments of $200.00 per month to retire this debt. These payments are to continue for three years.

The following conclusions of law from the Special Master's opinion, adopted by the District Court, are pertinent to the issues

on appeal:

1. The home at 2300 Woodcock was awarded to Daniel.
2. Michelle was awarded $6,000, a portion of the equity in the home.
3. Michelle will not be awarded maintenance because she is able to support herself through employment commensurate with her education and skills.
4. Michelle is designated as the primary custodial parent with Daniel granted supervised visitation.
5. Daniel shall be evaluated for parenting skills and, if appropriate, receive counseling and education to develop necessary parenting skills.
6. Daniel shall receive counseling with a primary therapist who is knowledgeable about head injuries.
7. Daniel may exercise supervised visitation with Danny twice a week and supervision shall be arranged through Extended Family Services in Missoula.
8. Danny's paternal grandparents shall have visitation with Danny once a month, providing for Danny's transportation, if they will sign a stipulation stating that they will not leave Danny alone with Daniel.
9. Daniel shall pay child support in the amount of $539.00.
10. Daniel shall pay for the repair of Michelle's tooth.
11. Each party will be responsible for his/her attorney fees.

From the order of the District Court, adopting the Special Master's Findings of Fact and Conclusions of Law, with some modifications, both parties appeal.

STANDARD OF REVIEW

The standard of review for findings of fact of a district court is whether the court's findings are clearly erroneous and whether its conclusions of law are correct. In re Marriage of Rada (1994), 263 Mont. 402, 405, 869 P.2d 254, 255. This Court is not bound by a lower court's conclusions of law; this Court remains free to reach its own conclusions. In re Marriage of Danelson (1992), 253 Mont. 310, 317, 833 P.2d 215, 219.

ISSUE I - $6,000 EQUITY IN THE HOUSE FOR MICHELLE

7

The Special Master found that Daniel had purchased the home prior to the marriage, making a downpayment of $16,000 from his settlement monies and that he had paid all mortgage payments, taxes and insurance payments associated with the house from his settlement and annuity. Moreover, Michelle "ha [d] not contributed substantially to the value of the house either monetarily or as a homemaker."

The distribution of property is governed by § 40-4-202, MCA, which provides in pertinent part:

> (1) . . . In dividing property acquired prior to the marriage; . . . the increased value of property acquired prior to marriage; . . . the court shall consider those contributions of the other spouse to the marriage, including:
> (a) the nonmonetary contribution of a homemaker;
> (b) the extent to which such contributions have facilitated the maintenance of this property; and
> (c) whether or not the property division serves as an alternative to maintenance arrangements.

This Court has held that the "source of the property was a major factor to be considered by the District Court dividing property under Section 40-4-202, MCA." In re Marriage of Summerfelt (1984), 212 Mont. 332, 337, 688 P.2d 8, 11. Moreover, if the increase in value of the property is not a product of contribution from a marital effort, the court may find that the non-acquiring spouse has no interest in the property at issue. In re Marriage of Stewart (1988), 232 Mont. 40, 44, 757 P.2d 765, 768. Although Stewart concerned inherited property, the proposition is applicable here.

In the instant case, the court specifically found that Daniel purchased the home with his own funds before the couple married and

8

he paid for all mortgage and insurance payments as well as taxes associated with the home. Michelle did not make any substantial contributions to the home monetarily or as a homemaker. The court also found that the increase in the value of the house was entirely due to the general inflation of home values in the Missoula area. Under subsection (a) and (b) of § 40-4-202, MCA, Michelle would not be entitled to any portion of the equity in the house because she made no contributions to the maintenance and value of the property.

Moreover, although the court stated that the $6,000 in equity in the house awarded to Michelle was in lieu of maintenance, the court also stated elsewhere in the opinion that it was not appropriate for Michelle to be awarded maintenance. Therefore, under subsection (c) of § 40-4-202, MCA, Michelle would not be entitled to a portion of the equity in the house. We also note that the length of the marriage was brief - the couple lived together as husband and wife for only five months.

Considering § 40-4-202, MCA, and our case law interpreting that statute, we determine that the District Court should have properly concluded that Michelle was not entitled to any share of the equity in the house. We hold that the District Court erred in awarding a share of the equity in the house to Michelle and accordingly, we reverse on this issue.

ISSUE II - TOOTH REPAIR

Daniel argues that he should not be liable for Michelle's dental expenses associated with her tooth injury because these damages were not plead and he had no notice and opportunity to

9

present evidence on the disputed issue. Michelle asserts that Daniel should pay for the repair of the tooth because he admitted to causing the damage. Moreover, although Michelle states that she did not specifically ask for these damages in her prayer for relief, she did request "such other and further relief as the Court may deem just and proper."

Finding of Fact no. 43 in the Special Master's findings and conclusions states that "[d]uring the marriage, Petitioner [Daniel] inflicted damage to Respondent's tooth. Costs of the repair to that tooth should be borne by the Petitioner. The estimated cost of this repair is approximately Three Thousand Dollars ($3,000.00)." Conclusion of Law no. 23 states that "Petitioner shall pay for the repair of Respondent's tooth in the amount not to exceed $3,000.00."

We find two problems with awarding Michelle up to $3,000.00 for the repair of the tooth in the instant case. First, although Michelle contends that Daniel admitted during the hearing that he had damaged her tooth, we have no record which we can review to determine whether an admission was indeed made. Moreover, we cannot determine whether, as Daniel insists, Michelle sought to introduce an estimate prepared by Dr. Ming but the exhibit was not received into evidence. Therefore, this Court is hampered by an inability to review the record to determine what evidence was actually presented. We do, however, find support in the record for Daniel's contention that he strenuously objected to the finding of fact and conclusion of law regarding the tooth damage and

subsequent repair.

Second, and most problematic, is the fact that Daniel received no notice regarding this claim, essentially a personal injury claim, until the dissolution hearing. There is no indication in Michelle's response to the petition for dissolution that the personal injury claim might be an issue during the proceedings. "The purpose of a pleading is to provide notice before trial to the opposing party of the specific relief being sought so that both parties have an opportunity to present evidence on the issues in dispute." Matter of Custody of C.J.K. (1993), 258 Mont. 525, 527, 855 P.2d 90, 91. Here, it appears that no such notice was provided and no opportunity to present evidence on the issue was afforded Daniel. C.J.K. states that there are exceptions which provide the court with jurisdiction to grant relief outside of the issues presented in the pleadings; if the parties stipulate that other questions may be considered or if the pleadings are amended to conform to the proof, citing Old Fashion Baptist Church v. Department of Revenue (1983), 206 Mont. 451, 457, 671 P.2d 625, 628. Parties may "stipulate" either expressly or impliedly. C.J.K., 855 P.2d at 91. (Citation omitted.) There is no evidence here that an expressed stipulation to consider the issue of tooth repair occurred.

Moreover, "[c]oncerning the issue of implied consent, we have stated that 'pleadings will not be deemed amended to conform to the evidence because of 'implied consent' where the circumstances were such that the other party was not put on notice that a new issue

11

was being raised."' C.J.K., 855 P.2d at 91. There is no evidence that Daniel received notice before trial that the tooth repair was an issue and therefore, he could not have consented to consider the issue. Further, he objected to the consideration of this issue because he was not provided proper notice, he does not admit to injuring the tooth and the issue of tooth repair is a personal injury issue, not a dissolution issue. Such objection cannot be interpreted to provide implied consent to consider the issue. C.J.K., 855 P.2d at 91. Therefore, there was neither a stipulation nor an amendment of the pleadings to conform to the proof and no exception applies here.

Lack of notice may have prejudiced Daniel and prevented him from having adequate opportunity to prepare evidence and testimony regarding the issue. C.J.K., 855 P.2d at 91. We therefore hold that the determination of the issue of the tooth repair was not properly before the District Court and we reverse the District Court's conclusion on this issue.

ISSUE III - PAYMENT OF COUNSELING

Daniel argues that there was no substantial credible evidence that he should have only supervised visitation until he received appropriate counseling and an assessment of his parenting skills. According to Daniel, the court did not consider the costs associated with counseling and supervised visitation. Section 40-4-212, MCA, states that "[t]he court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors, including. . . the mental and

12

physical health of all individuals involved [and] physical abuse or threat of physical abuse. . . ." The Special Master made the following findings regarding Daniel's physical and mental health as well as his issues of physical abuse:

First, Daniel was involved in a wrestling accident when he was 15 years old. The accident resulted in brain trauma, leaving his left arm permanently paralyzed and his left side impaired. His physical condition is expected to deteriorate as he gets older. Second, he also has a learning disability which causes problems in processing and communicating orally and in writing. Third, Daniel has cared for Danny without assistance for only a few brief time periods. Fourth, Karen Emerson, the social worker who conducted the custody assessment, concluded that Daniel should be granted reasonable supervised visitation. Fifth, Emerson recommended that visitation be supervised until he completed a Child Abuse Potential Inventory, an Adult Parent Inventory, counseling, education and training in child development and parenting skills, and counseling with a primary therapist trained in treating clients with head injuries. Emerson was particularly concerned with Daniel's violent outbursts and periods of depression. These findings are supported by the Special Master Report which Karen Emerson provided to the Special Master. When Daniel was interviewed during the custody assessment process, he stated that he had hit Michelle and destroyed property in anger on several occasions. He also reported that law enforcement authorities had been called to the home at least six times due to his violent behavior, and he admitted he has

problems managing his anger. He also spoke about being hospitalized two times for suicidal ideation.

Given that § 40-4-212, MCA, requires consideration of the mental and physical health of the individuals involved, and because of the reported incidents of abuse and possibility of future physical abuse here, the District Court appropriately granted supervised visitation. Daniel admitted to having problems with anger and aggression, including incidents of hitting Michelle and destroying property. There were also reports of six incidents where the police were called to the home because of violent behavior on Daniel's part. Clearly, there is cause for concern for Danny's safety. Moreover, although this Court may be sympathetic to Daniel's concern regarding the cost of the counseling, under § 40-4-212, MCA, the best interest of the child is the paramount consideration in granting visitation.

This case can be distinguished from In re Marriage of Gebhardt (1989), 240 Mont 165, 783 P.2d 400, cited by Daniel. In Gebhardt, the wife reported eight instances of abuse by the husband/father. However, there was conflicting testimony as to who instigated some of those confrontations between the husband and the wife and between the husband and one of the children. Both parents agreed that corporal punishment was appropriate for children. The Court also found that the wife's affidavit regarding visitation was self-serving and contained no evidence to reflect "a potential for serious endangerment." Gebhardt, 783 P.2d at 405.

In the instant case, there was evidence presented by both

14

parties to the effect that Daniel has had problems with anger and physical aggression including several incidents where the police were called. These problems, where they are found to exist, must properly be considered by the court in its assessment of custody and visitation under § 40-4-212, MCA.

Daniel also argued that Emerson lacked the expertise to make recommendations concerning Daniel's medical condition. However, during the custody evaluation, the social worker interviewed Daniel, Michelle, references, therapists, police reports, an employment counselor as well as interviewing a rehabilitation social worker, <u>trained to work with individuals with head injuries</u> to facilitate her report to the Special Master. She also reviewed appropriate literature to help her understand head-injured persons and their problems and concerns. Emerson has a master's degree in social work, and she located additional resources to ensure a valid and comprehensive custody evaluation, taking into consideration the special concerns and problems of head-injured persons. This argument is accordingly, without **merit.**

In the instant case, Daniel has been given the opportunity for unsupervised visitation upon the approval of his therapist and upon proper training and education in child development and parenting skills. Albeit a financial strain, with Daniel's history and background, this is an appropriate visitation plan. Substantial evidence supports the District Court's conclusion on this issue. We hold that the District Court properly determined and correctly concluded that Daniel should undergo counseling as a condition of

exercising visitation.

ISSUE IV - VARIANCE IN CHILD SUPPORT

Daniel's final argument concerns whether the District Court should have awarded him a variance in child support for his expenses associated with the joint bankruptcy obligation and the court-ordered counseling. Daniel contends that he should receive a variance of $100.00 per month for the joint bankruptcy payments and a further variance for the cost of the counseling. Daniel argues that the District Court determined that his expenses were $1,347.27 per month, which costs did not include any child support payments or the cost of repairing his vehicle which was not in operating condition. Daniel's unemployment benefits were about to expire, and he was still unemployed at the time of dissolution. His monthly annuity is $1,200.00, and even with his unemployment benefits, he was finding it hard to meet his monthly expenses. Daniel contends that the result of the court order to pay child support of $539.00 per month is that he has to pay almost half of his annuity income to child support. Moreover, he still cannot afford to pay for the counseling and supervised visitation and is, in effect, prevented from seeing his child in a meaningful way.

Rule 46.30.1543(h), ARM, permits a variance in child support payments based upon the overall financial condition of a parent. In the instant case, Daniel has expenses of $1,347.27.00 per month, which does not include the cost of repair to his truck, child support payments or the cost of counseling and supervised visitation. It does include a $200.00 monthly payment for the

16

joint bankruptcy obligation. Daniel receives a $1,200.00 per month annuity and was receiving $103.00 per month in unemployment compensation. However, the unemployment payments were about to expire at the time of the dissolution.

Clearly, Daniel has a difficult **time** meeting his expenses without even considering child support and counseling payments. It is unrealistic to expect him to meet his own expenses, make payments on the joint bankruptcy obligation <u>and</u> make child support payments of $539.00 &pay for counseling in order to exercise his visitation. Considering subsection (h), of Rule 46.30.1543, ARM, a variance in child support payments is in order. At the time of the dissolution, Daniel's overall financial condition was poor. This situation needs to be carefully considered in determining an appropriate child support payment amount for Daniel. We reverse the monthly child support payments set at $539.00 and remand for a recalculation considering a variance from the child support obligation previously calculated.

CROSS APPEAL ISSUE I - GRANDPARENT VISITATION

Michelle's first issue on cross-appeal is whether it was error for the court to allow grandparent visitation when there was no petition from the grandparents before the court. Daniel argues that the grandparents were actually granted visitation in order to facilitate his exercise of parental visitation and therefore, the granting of grandparent visitation was appropriate.

There appears to be no disagreement that a petition for visitation by Danny's paternal grandparents was never filed.

17

Section 40-4-217(2), MCA, permits the grant of visitation to grandparents upon the petition of a grandparent if the court finds, after a hearing, that visitation would be in the best interest of the child. Even though there was some discussion about grandparent visitation in the Special Master's Report, the Special Master's Recommended Findings and Conclusions and the District Court's Order regarding Objections to the Special Master's Recommended Findings, Conclusions and Final Decree of Dissolution, there is no mention of a petition for grandparent visitation nor is there evidence that a hearing was held to determine whether such visitation was in Danny's best interests. Therefore, this issue was not properly before the court and we hold that the District Court erred in granting visitation to the paternal grandparents and accordingly, reverse on this issue.

CROSS-APPEAL ISSUE II - ANNUITY BENEFICIARY

Michelle argues that Danny should be the surviving beneficiary of Daniel's annuity, and that the trial court should have ordered that designation to avoid potential future litigation because Daniel's mother, the named surviving beneficiary, and Michelle do not "get along." Therefore, according to Michelle, Danny may not receive the money to which he is entitled. Daniel contends that he is entitled to designate a personal representative of his choice to administer his annuity, and that, since there is no actual controversy here, Michelle cannot request relief for a future harm which "possibly may occur." We agree with Daniel.

The dispensation of Daniel's estate and the payment of child

18

support from his estate are not issues before this Court because Daniel is still alive.  No actual case or controversy is presented. "Therefore we do not have a justiciable controversy over which the judicial power to determine real controversies may be exercised." Hardy v. Krutzfeldt (1983), 206 Mont. 521, 525, 672 P.2d 274, 276. Absent a real controversy, this Court does not have the power to address the issue presented.  Hardy, 672 P.2d at 276.  Nor was this issue properly before the District Court.  Accordingly, it will not be considered further.

CROSS APPEAL ISSUE III - MAINTENANCE

Michelle argues that she should have been awarded maintenance because her property is insufficient to provide for her reasonable needs.  She asserts that her need for retraining and the needs of her child justify an award of maintenance.  Daniel counters her argument by stating that she is in good health, is able-bodied and "is able to support herself through employment commensurate with her education and skills [and that] she does not meet the statutory requirements for an award of maintenance."  Daniel further states that Michelle is more employable than he is, and "both parties have had inadequate financial resources to meet their monthly obligations."  We agree with Daniel.

The Special Master made the following findings of fact about Michelle, adopted by the District Court.  She is able-bodied and in good health and although she had been unemployed, she was hired during the course of the hearing to be trained as a certified nurse's aide at $5.10 per hour plus benefits with a $.50 raise once

19

certified. The court found that she had demonstrated that she was able to locate work appropriate to her level of training and education. The court found that her job would help her to achieve her goal of becoming an LPN or an RN. The court also determined that the marriage had lasted only five months. The court concluded that she did "not meet the statutory requirements for an award of maintenance and, therefore maintenance [was] not appropriate in this case."

The court found that Daniel suffered serious physical impairments when he received a head injury when he was 15 years old. His left arm is permanently paralyzed and the left side of his body is impaired. His physical condition is expected to deteriorate as he gets older. Moreover, he has a learning disability which affects his processing of oral and written communication and impedes his ability to communicate effectively. He was unemployed at the time of the dissolution and was not expected to work at any jobs other than manual labor jobs such as dishwasher and custodial work. His physical and mental impairments were found to restrict his ability to obtain employment.

Clearly, Michelle's educational and economic prospects are brighter than Daniel's prospects. Daniel can barely provide for his own needs, much less provide maintenance for Michelle. She has proven that she is able to "support herself through employment commensurate with her education and skills." She has already sought and obtained a position through which she can continue to receive an education and improve her skills and employability. She

20

does not meet the requirement for maintenance set forth in § 40-4-203(1)(b), MCA, because she is able to support herself through appropriate employment, and she is not the custodian of a child whose condition makes it inappropriate to seek employment outside of the home. Moreover, considering the factors set forth in § 40-4-203(2), MCA, an award of maintenance is inappropriate. The marriage was of short duration, Michelle is young, able-bodied and in good health. Daniel is barely able to meet his own needs and does not have the ability to work in positions other than manual labor such as dishwashing or custodial work. We therefore hold that the District Court correctly concluded that this is not a situation in which an award of maintenance would be appropriate.

CROSS APPEAL ISSUE IV - CALCULATION OF EQUITY

Michelle's next argument is that the District Court's calculation of the amount of equity in the house to which she was entitled was miscalculated. This issue was dispensed with in Appeal Issue I wherein we held that Michelle was not entitled to any equity in the house. Therefore, this issue need not be further addressed.

CROSS APPEAL ISSUE V - ATTORNEY'S FEES

Michelle's final argument is that she should have been awarded attorney's fees. Section 40-4-110, MCA, governs awards of attorney's fees and provides:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees. . . .

21

The District Court may award attorney's fees after considering the financial resources of both parties and such an award is "largely discretionary with the District Court. . ." In re Marriage of Roullier (1987), 229 Mont. 348, 360, 746 P.2d 1081, 1088. This is not a case such as Roullier where one party is clearly in a better financial position and can properly be ordered to pay attorney's fees. In the instant case, in view of both parties' well-documented negligible financial resources and Daniel's overall health and employability problems, neither party is in a position to pay the other party's attorney's fees and the District Court properly considered this issue. We hold that the District Court did not err in ordering each party to pay their own attorney's fees.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

22