No. 95-036

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE MARRIAGE OF

ROBIN N. JEPPPESEN,

     Petitioner and Appellant,

  and

KARL GRANT JEPPESEN,

     Respondent and Respondent.

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Barbara E. Bell, Bell & Marra,
Great Falls, Montana

    For Respondent:

        Joan E. Cook and M. Gene Allison,
Attorneys at Law, Great Falls, Montana

Submitted on Briefs:  October 12, 1995

Decided:  November 21, 1995

FILED

NOV 2 1 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Robin Jeppesen filed a petition in the District Court for the Eighth Judicial District in Cascade County for dissolution of her marriage to Karl Grant Jeppesen (Grant). Following a three-day hearing, the court entered its decree of dissolution. In its decree, the court divided the couple's personal and real property, provided for joint custody of the couple's minor child, awarded primary physical custody to Robin, and awarded reasonable unsupervised visitation to Grant. The court also found that Robin had frustrated visitation when she violated the temporary visitation order, and ordered that she pay Grant's mileage and attorney fees. Robin appeals from the District Court's decree. We affirm the District Court.

There are six issues on appeal:

1. Did the District Court err when it adopted Grant's proposed findings of fact and conclusions of law verbatim?

2. Did the District Court abuse its discretion when it quashed the subpoena issued for Grant's employment records?

3. Did the District Court improperly limit Robin's rebuttal time?

2

4. Did the District Court abuse its discretion when it granted Robin and Grant joint custody of their minor child and allowed unsupervised visitation by Grant?

5. Did the District Court abuse its discretion when it divided the couple's real and personal property?

6. Did the District Court err when it found that Robin frustrated Grant's visitation and awarded attorney fees and mileage to Grant?

## FACTUAL BACKGROUND

Robin and Grant dated and lived together for several years prior to their marriage in 1982. During November 1986, Robin gave birth to their daughter, Karlene. At that time, Grant was employed as a deputy sheriff in Toole County. They lived in Sunburst, Montana, in a house they purchased in 1983 for $18,500.

In 1991, Robin purchased a home in Cascade with funds she had received from a personal injury settlement in 1988. She paid $25,000 toward the purchase price. She agreed to pay the $30,000 balance periodically. She moved into the Cascade home in June 1993, and filed a petition for dissolution of her marriage to Grant on August 13, 1993. On September 25, 1993, Robin's twenty-one-year old daughter from a previous relationship, Casey, filed a sexual abuse complaint against Grant. Casey alleged that Grant had sexually abused her over a nine-year period, until she was seventeen years old. Casey had made similar allegations in 1980, when she was eight years old. Those charges were eventually dismissed with prejudice.

3

As a result of Casey's allegations in 1993, the Toole County Sheriff's office terminated Grant's employment. However, no criminal charges were filed, and Grant later agreed to a release of and settlement with Toole County which, in part, characterized his termination of employment as retirement. In addition, the agreement provided that the County would expunge all records related to the charges from Grant's personnel file and that Grant would release all claims against the County. On July 11, 1994, the investigation was closed "with finality and with prejudice."

The issues raised by the parties were tried during three days in November and December 1994. Both parties submitted separate home studies related to the issue of custody. In addition, Casey renewed her allegations that Grant had sexually abused her over a period of nine years, and Robin's sister, Dawn, testified that she had been sexually assaulted by Grant in 1977.

The District Court found that "credibility problems exist with [Dawn and Casey]," and determined that "both [Robin and Grant] are fit and proper persons to be granted custody and control of [Karlene]." Based on those findings, the court decreed that Robin and Grant should have joint custody of Karlene, that Robin would be Karlene's primary caretaker, and that Grant would have reasonable unsupervised visitation.

The District Court also divided the couple's real and personal property, and ordered Robin to pay $1077.50 for attorney fees and costs that Grant incurred as a result of Robin's frustration of his visitation.

4

ISSUE 1

Did the District Court err when it adopted Grant's proposed findings of fact and conclusions of law verbatim?

At the conclusion of the trial in this case, the District Court ordered each party to prepare and submit proposed findings of fact, conclusions of law, and an order. Robin asserts that the District Court erred when it adopted Grant's twenty-three page findings of fact and conclusions of law verbatim. She specifically asserts that "the trial court has adopted findings which are overly comprehensive of much unimportant and irrelevant detail, while at the same time failing to address the main issues in the case."

Adoption of a party's proposed findings and conclusions is specifically authorized by Rule 52(a), M.R.Civ.P., so long as the findings are supported by substantial evidence and the conclusions are correct. In *In re Marriage of Nikolaisen* (1993), 257 Mont. 1, 5, 847 P.2d 287, 289, we set forth our standard of review:

> When reviewing the adequacy of the findings of fact and conclusions of law, we examine whether they are sufficiently comprehensive and pertinent to provide a basis for a decision, and whether they are supported by substantial evidence.

While we acknowledge that the District Court's findings in this case were in some instances over-inclusive and irrelevant, we hold that the court did comprehensively address the allegations of sexual abuse, the child custody considerations, and the division of the couple's real and personal property. Although the court adopted Grant's findings and conclusions verbatim, we hold that those findings and conclusions were sufficiently comprehensive and

5

pertinent to provide a basis for the court's decision and that those findings which were essential to the court's decision were supported by substantial evidence and were not clearly erroneous. We therefore hold that the court did not err when it adopted Grant's proposed findings, conclusions, and order.

ISSUE 2

Did the District Court abuse its discretion when it quashed the subpoena issued for Grant's employment records?

At trial, John Seidlitz testified that he had represented Grant in negotiations with Toole County after Grant was terminated from his employment in 1993. The release and settlement agreement which resulted from those negotiations provided, in part, for nondisclosure of facts related to Grant's termination. The agreement provided:

> The only information the County will provide to anyone inquiring about [Grant's] present or past work status is [Grant's] period of employment, his work classification, his beginning of subsequent rates of pay, his rank, his description of duties and that [Grant] retired from his employment effective November 23, 1993.

Seidlitz's testimony did not exceed the parameters of this confidentiality agreement.

After Seidlitz testified, however, Robin subpoenaed Grant's employment records. The District Court granted Grant's motion to quash on the grounds that revealing the records would violate the confidentiality agreement between Grant and Toole County. On appeal, Robin asserts that the court's decision to quash the subpoena was erroneous and prejudicial because she was denied the

6

opportunity to effectively rebut Grant's testimony regarding conduct which led to his termination. However, a review of the record suggests otherwise. Criminal investigation records which fully disclosed the extent of any evidence in support of Casey's charge were available for Robin's use. However, she chose not to use them during her cross-examination of Seidlitz or Grant. We, therefore, hold that in light of the confidentiality agreement between Grant and Toole County, and because there was another available source of the information that Robin sought, the District Court did not abuse its discretion when it granted Grant's motion to quash Robin's subpoena.

## ISSUE 3

Did the District Court improperly limit Robin's rebuttal time?

The Jeppesen's dissolution trial was scheduled for a three-day period during the final weeks of the District Court Judge's term of office. At the end of the second day of testimony, the Judge asked if two to three hours would be sufficient time within which to complete presentation of the evidence. Neither Grant nor Robin objected. On the final afternoon of the trial, the Judge noted that the testimony would have to be finished by 5 p.m., or the case would be tried over again by his replacement after the first of the year. After Grant's direct and cross-examination were complete, five minutes remained for rebuttal evidence. Robin now asserts that "because the court did not take the time to hear rebuttal, the court has made erroneous findings and failed to address the issue of whether [Grant] poses a threat to his daughter."

7

We conclude that the District Court did not deprive Robin of time for rebuttal testimony. Robin failed to object to the court's decision to allow three hours for testimony on the last day of trial. Furthermore, the judge did not decline to hear Robin's rebuttal, but merely remarked that he would not be the sitting judge if the trial was continued. If Robin did need more time, she had the option of requesting the court to continue the trial to a future date.

## ISSUE 4

Did the District Court abuse its discretion when it granted Robin and Grant joint custody of their minor child and awarded unsupervised visitation to Grant?

We review a district court's findings of fact in child custody cases to determine whether those findings are clearly erroneous. *In re Marriage of Dreesbach* (1994), 265 Mont. 216, 220-21, 875 P.2d 1018, 1021. We will not reverse the final custody and visitation determinations which are based on those findings unless an abuse of discretion is clearly demonstrated. *Dreesbach*, 875 P.2d at 1021-22.

Robin maintains that the District Court erred when it awarded Grant joint custody and unsupervised visitation. She contends that she should have been awarded sole custody of Karlene pending determination of Grant's fitness, and that the court should have continued to limit Grant to supervised visitation until he completed a sex offender evaluation. Robin specifically asserts

8

that the court's findings are not supported by the record, that the court failed to take her home study into account when it made its determination, and that the court erroneously declined to require Grant to undergo a sex offender evaluation.

The record demonstrates, however, that the District Court did have the benefit of adequate testimony and evidence on which to base its custody and visitation decision. The court heard testimony from several unbiased observers who had personally observed Grant's close relationship with Karlene. The court interviewed Karlene in chambers without either parent present. The court reviewed a home study submitted by each party. Finally, although the court heard testimony from Robin's sister, Dawn, and her daughter, Casey, about Grant's alleged sexual abuse of them, it determined that neither witness was credible. The court further noted that there was no evidence of any inappropriate behavior between Grant and Karlene.

The record is also clear that the District Court did, in fact, review both parties' home studies before it reached its final determination. The court acknowledged both reports in its findings of fact and stated: "The Court has reviewed the home studies and finds that both parties have an adequate physical environment in which to raise Karlene. [Robin] can provide a stable and suitable home environment for Karlene." Where two separate reports with two different recommendations are submitted, the district court is in the best position to review and evaluate the information. Although we require the district court to consider submitted reports, it

9

does not follow that the court must adopt a report's recommendations regardless of other evidence. *See, e.g., Maxwell v. Maxwell* (1991), 248 Mont. 189, 192-93, 810 P.2d 311, 313.

Finally, we hold that the District Court did not err when it chose not to require that Grant participate in a sex offender evaluation. The decision about whether to order such an examination is discretionary and will not be overturned absent a showing that the court abused its discretion. *In re Marriage of Njos* (1995), 270 Mont. 54, 60, 889 P.2d 1192, 1196. Mere allegations of sexual abuse, without more, are insufficient to trigger the requirement of a sex offender evaluation. In this case, the District Court was in the best position to determine whether the allegations had some merit, and whether there was any potential for injury to Karlene. We hold that the court did not abuse its discretion when it determined that a sex offender evaluation was unnecessary.

For these reasons, we affirm the District Court's child custody and visitation decision.

ISSUE 5

Did the District Court abuse its discretion when it divided the couple's real and personal property?

A district court's division of marital property is reviewed to determine whether the findings of fact on which the division is based are clearly erroneous, and if not, whether the division based on those facts was an abuse of discretion. *In re Marriage of Smith* (1995), 270 Mont. 263, 267-68, 891 P.2d 522, 525.

10

The factors to be considered in the division of the marital estate are set forth in § 40-4-202, MCA. The statute vests broad discretion in the district court to equitably apportion marital property. *In re Marriage of Collett* (1981), 190 Mont. 500, 504, 621 P.2d 1093, 1095. A court need not articulate each factor separately as long as the findings are sufficient to allow nonspeculative review by this Court. *In re Marriage of Syljuberget* (1988), 234 Mont. 178, 185, 763 P.2d 323, 326.

Robin contends that the Court erred when it divided the personal property based on the list presented for the first time in Grant's proposed findings because Grant failed to present property exhibits at trial, no testimony was presented concerning many items on the list, and some of Grant's testimony directly contradicted her testimony.

A review of the record reveals that either Robin or Grant testified concerning nearly every item of personal property. Moreover, those items not discussed at trial, but which were awarded to Grant, were awarded consistent with Robin's proposed distribution. We, therefore, conclude that the District Court did not abuse its discretion when it divided the couple's personal property.

Robin also challenges the District Court's division of the real property located in Cascade and Sunburst. First, she alleges that Grant was not entitled to any portion of the Cascade property because she made the $25,000 down payment and has made all of the

11

payments from her personal injury settlement money. Second, Robin contends that the court erred when it assigned a $90,000 value to the Cascade property and divided it without any testimony regarding its present value.

Robin cites our decision in *In re Marriage of Bradshaw* (1995), 270 Mont. 222, 891 P.2d 506, to support her assertion that Grant was not entitled to any of the Cascade property. In *Bradshaw*, we stated that the source of the property was a major factor to be considered by the court when it divided the property pursuant to § 40-4-202, MCA, and held that the wife was not entitled to any share of equity in the house purchased by husband prior to the marriage. *Bradshaw*, 891 P.2d at 511.

*Bradshaw* is distinguishable from this case. In *Bradshaw*, the property at issue was bought prior to the marriage and paid for entirely out of the husband's personal injury compensation. The couple in *Bradshaw* was separated within five months of the marriage and filed for divorce during the first year of marriage. That court found that the wife made no contributions to the maintenance and value of the property. *Bradshaw*, 891 P.2d at 511.

In this case, testimony reveals that the property was purchased during Grant and Robin's eleven-year marriage as a family vacation home. Furthermore, while testimony did establish that Robin made the down payment, she was given credit for that payment before the equity in the property was divided and there was no evidence that the remaining payments were made from her settlement

12

money.  Finally, evidence in the record supports the court's finding that Grant contributed to the home by making repairs to it. In fact, Grant testified that in the summer of 1993 he spent thirty-nine days in Cascade working on their residence and making necessary repairs.  Specifically, Grant testified that he hooked the underground pumping system up to the pump in the river, helped drill the new well, helped "pin" the well, put in water heaters, fixed the showers, fixed the bathroom sinks, and rewired the water heater from gas to electric.  Because the property in this case was purchased during the marriage, and because Grant contributed to the property, we hold that the District Court did not err when it awarded a portion of the property to Grant.

Robin also contends that the court erred when it assigned a $90,000 value to the Cascade property and divided it without any testimony concerning the present value of the equity.  Robin testified that she purchased the Cascade property for $55,000, that she had made a down payment in the amount of $25,000, and that approximately $30,000 was still due for the property.  Based on that testimony, the court awarded each party one-half of the equity in the property which it valued at approximately $90,000.  The equity was to be calculated after deducting Robin's initial $25,000 payment.  Therefore, with or without testimony regarding the property's present value, we conclude that Robin's share was equitably determined.

13

For these reasons, we hold that the District Court did not abuse its discretion when it awarded each party one-half of the equity in the Cascade property.

Similarly, Robin alleges that the District Court erred by failing to evaluate and assign repayment of the debt owed for the Sunburst property. The parties agreed that the value of the Sunburst property was $20,000 and the court found that each party should be given one-half of the equity in the property. The court dealt with the debt in Finding of Fact No. 108 which specifies that both parties will be responsible for the joint debt on the real property but that the judgment lien on the Sunburst property, resulting from a premarital dispute, will be Grant's sole obligation. Therefore, the judgment lien will not be included in the determination of the equity in the Sunburst property, and Robin's contention that the court erred by not specifying how the allocation of debt affects the award of equity is misplaced. Moreover, the amount of the debt is not relevant because the equity, which is determined by subtracting the debts, is to be equally divided.

Based on the record, we conclude that the District Court's findings of fact were not clearly erroneous and that the court did not abuse its discretion when it divided the couple's marital property.

ISSUE 6

Did the District Court err when it found that Robin frustrated Grant's visitation and awarded attorney fees and mileage to Grant?

14

Section 3-1-523, MCA, provides that contempt orders from the district courts are final and not normally reviewable by this Court; however, we make an exception in family law cases. *In re Marriage of Dreesbach* (1994), 265 Mont. 216, 223-24, 875 P.2d 1018, 1022. Our review of contempt orders is limited to whether the district court acted within its jurisdiction and whether the evidence supports the order. *In re Marriage of Sullivan* (1993), 258 Mont. 531, 539-40, 853 P.2d 1194, 1200.

Grant moved that the District Court hold Robin in contempt for frustrating visitation when she failed to comply with the court order pertaining to Grant's temporary rights to supervised visitation. The District Court set a date for a contempt hearing but, after stipulation by the parties, combined the contempt proceedings with the final trial on the merits.

At trial, Grant testified that he was denied visitation on sixteen occasions. Additionally, he testified that he was denied visitation on all birthdays and holidays, including Father's day and Easter Sunday. Furthermore, he testified that he was forced to drive 110 miles one way for each unsuccessful visitation.

Robin asserted at trial that she was not under an obligation to let Karlene go with Grant because he did not always use those supervisors who had been approved by the court. However, an approved supervisor for Grant and Karlene's visitation rebutted Robin's testimony when she testified that Robin's attorney was informed about substitute supervisors and although he indicated

15

that he might need to talk with them, never did. The supervisor also testified that she and Grant encountered much difficulty getting Robin to allow Grant to have his supervised visitation, and that on at least five to ten occasions, she and Grant went to pick up Karlene only to find that Robin had failed to deliver the child.

Despite the court-ordered supervised visitation, Robin attempted to keep Grant from seeing Karlene. Robin had no authority to limit or place any restrictions on Grant's visitation. The District Court's contempt order was, therefore, supported by the evidence that Robin consistently frustrated the court's visitation order.

We next consider whether the District Court's punishment for contempt was appropriate. Section 3-1-519, MCA, provides in pertinent part that "[i]f it be adjudged that he is guilty of the contempt, a fine may be imposed on him not exceeding $500 or he may be imprisoned not exceeding 5 days, or both."

Robin challenges the contempt punishment because it exceeds the $500 maximum. Specifically, the District Court awarded Grant attorney fees and mileage in the amount of $1,077.50. However, this Court has held that a district court has equitable powers to punish a party for contempt beyond the terms of § 3-1-519, MCA. *Dreesbach*, 875 P.2d. at 1023. In *Dreesbach*, we affirmed a contempt order which required the petitioner to seek professional counseling and which resolved a conflict concerning child support arrearages and day care obligations against the petitioner. *Dreesbach*, 875 P.2d

16

at 1023. Similarly, we have upheld contempt punishments which imposed a thirty-day jail term and reasonable attorney fees. *In re Marriage of Boharski* (1993), 257 Mont. 71, 77, 847 P.2d 709, 713; *In re Marriage of Redfern* (1984), 214 Mont. 169, 173, 692 P.2d 468, 470.

We conclude, after a review of the record, that the District Court was warranted in awarding attorney fees and costs to Grant. Although the award exceeds the $500 provided for in § 3-1-519, MCA, we hold that the evidence supports the finding of contempt and that the court acted within its jurisdiction and equitable powers when it imposed the punishment.

For the reasons stated above, we affirm the decree of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices