No. 01-141

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 57N

IN RE THE MARRIAGE OF
CONSTANCE J. REDENIUS,

Petitioner/Appellant,

and

MYRON E. REDENIUS,

Respondent/Respondent.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
        In and for the County of Yellowstone,
        The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert C. Smith, Attorney at Law, Billings, Montana

For Respondent:

J. Reuss, Wright Tolliver Guthals, P.C., Billings, Montana

Submitted on Briefs:  July 26, 2001

Decided:  March 28, 2002

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    The Thirteenth Judicial District Court, Yellowstone County, entered a decree dissolving the marriage of Appellant Constance J. Redenius ("Connie") and Respondent Myron E. Redenius ("Mike"). Connie appeals from the division of marital property in the dissolution decree. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

¶3    We address the following issues on appeal:

¶4    1.    Did the District Court fail to make adequate findings as to the net worth of the parties?

¶5    2.    Should the District Court have included Mike's premarital property in the marital estate?

¶6    3.    Did Mike's gambling activity cause a dissipation of the marital estate such that the District Court should have accounted for it in the property distribution?

¶7    4.    Did the District Court err when it included the full value of the parties' condominium within the marital estate?

¶8    5.    Did the District Court err when it characterized the "LeFever Contract" as Mike's premarital property?

## BACKGROUND

¶9    On October 24, 1994, Connie and Mike were married in Billings, Montana. Mike was a self-employed dentist who had practiced in Billings for approximately twenty-eight years. Prior to the marriage, Mike had acquired substantial assets and liabilities. Connie was unemployed at the time the parties married and owned a modest number of unencumbered assets.

¶10    Throughout the marriage, Mike continued to work at his dental practice. To some extent, Connie worked with the practice to reduce its overhead but did not receive a salary for her efforts. The parties disagree about Connie's official role with the practice but Mike agrees that her work "streamlined the purchasing procedures in the office to some degree and trimmed waste from the office budget . . . ." Connie was not otherwise employed during the marriage.

¶11    On September 18, 1997, Connie filed a petition for dissolution and requested that the District Court equitably divide the marital assets and liabilities. Ultimately, the parties went to trial on April 28

and May 5, 2000. Following the nonjury trial, the District Court issued its findings of fact, conclusions of law, and decree on September 26, 2000. Using the date of separation for valuation purposes, the District Court calculated the marital estate's assets at $116,106 and its liabilities at $9,721. In dividing the marital estate, the District Court distributed $78,725 to Connie and $37,381 to Mike. Mike also assumed the $9,721 liability. Each party retained their respective premarital and post-separation assets and liabilities pursuant to the decree.

¶12   On October 20, 2000, Connie requested that the District Court amend its judgment pursuant to Rule 59, M.R.Civ.P., because it allegedly erred in valuing and allocating the marital estate. On December 19, 2000, the District Court denied Connie's motion to amend. Connie appeals the District Court's September 26, 2000, findings of fact, conclusions of law, and decree.

## STANDARD OF REVIEW

¶13   We review a district court's findings of fact regarding the division of marital property to determine whether they are clearly erroneous. In re Marriage of Engen, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26. If substantial credible evidence supports the district court's judgment, it will not be disturbed absent an abuse of discretion. In re Marriage of Hogstad (1996), 275 Mont. 489, 496, 914 P.2d 584, 588. In a marriage dissolution proceeding, the test for an abuse of discretion is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. Engen, ¶ 26. Finally, the standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## DISCUSSION
## ISSUE ONE

¶14   Did the District Court fail to make adequate findings as to the net worth of the parties?

¶15   Connie claims that the District Court should have entered findings regarding the parties' net worth just prior to the marriage and then again at dissolution to incorporate the variance into the marital estate. Connie insists that the District Court's failure to do so constitutes reversible error.

¶16   For some time, Montana has followed the long-standing principle that a district court must make findings of fact regarding the net worth of a marital estate prior to equitably distributing the estate. See Schultz v. Schultz (1980), 188 Mont. 363, 365, 613 P.2d 1022, 1024. Further, there must be complete findings as to the assets and liabilities of the parties and their values for establishment of a net worth. Schultz, 188 Mont. at 365, 613 P.2d at 1024. Here, the District Court complied with this mandate. The District Court entered findings regarding the parties' premarital, marital, and post-separation property and valued each respective asset and liability. In so doing, the District Court calculated a net worth for the marital estate. Connie cites to no authority which requires a district court to calculate the parties net worth at the time of marriage and at the time of dissolution in establishing the marital estate. With the exception of the findings discussed below in issues four and five, we conclude that the District Court's findings of fact regarding the net worth of the parties are not clearly erroneous.

## ISSUE TWO

¶17    Should the District Court have included Mike's premarital property in the marital estate?

¶18    Connie cites § 40-4-202, MCA, for the proposition that "[c]ourts shall consider contribution of a non-acquiring spouse to the maintenance of separate property." Connie asserts that the parties agreed to live frugally during the initial years of their marriage so they could reduce Mike's premarital financial obligations. Connie insists that her contributions of labor and marital income toward the debt reduction facilitated the preservation and maintenance of Mike's premarital property for their retirement. Therefore, Connie contends that the District Court should have included Mike's premarital property in the marital estate.

¶19    As to the parties' premarital and post-separation assets and liabilities, the District Court apportioned each accordingly after considering the marital contributions by the non-owning spouse. Most of these assets and liabilities were distributed to the original owner. However, as to Mike's dental practice, the District Court found:

> It is undisputed that Mike's dental practice, including the office business checking account at First Interstate Bank, Billings Heights and the general accounts receivable, are premarital assets. Both parties agree Connie did make marital contributions to the dental practice over the course of the three year marriage. It is further undisputed that the value of these assets, individually as well as collectively, have either remained the same or decreased during the marriage and therefore a marital increase of zero should be used in valuing the marital estate.

> Therefore, the District Court concluded:
> [C]onnie would be entitled to an equitable share of the marital increase in that asset. However, the parties agree that no marital increase exists in the value of the dental practice. Therefore, the Court concludes that Connie is entitled to a larger proportion of the marital estate as a whole in compensation for her marital contributions to the dental practice.

¶20    Regarding Connie's claim for reimbursement of the marital income used to satisfy Mike's premarital debt, the District Court cited Montana case law for the proposition that it could not "distribute what is not there." The District Court concluded that "to award Connie a portion of the debt reduction would be to award Connie more than the marital estate contains." We hold that the District Court's findings of fact are not clearly erroneous and it did not abuse its discretion in excluding Mike's premarital property from the marital estate.

## ISSUE THREE

¶21    Did Mike's gambling activity cause a dissipation of the marital estate such that the District Court

should have accounted for it in the property distribution?

¶22    Connie submits that her "testimony and exhibits reflect that Mike wasted at least $56,300 from marital income without Connie's knowledge until she discovered his activities and without her consent thereafter." Connie argues that Mike's gambling activities dissipated the marital estate to the extent it consumed marital income. Therefore, Connie asserts that the District Court should have accounted for this dissipation in the property distribution.

¶23    Section 40-4-202(1), MCA, permits a district court to consider "dissipation of value of the respective estates" by one or both of the parties in its apportionment of the marital estate. However, any finding of dissipation must be supported by substantial evidence. In re Marriage of Stewart (1988), 232 Mont. 40, 43, 757 P.2d 765, 767. Here, the District Court found the following:

> Connie testified she saw Mike's vehicle at establishments where gambling takes place and offered various canceled checks and evidence of ATM withdrawals in support of her argument. However, Connie admitted she never directly observed Mike gambling or spending the proceeds from the checks or ATM withdrawals.
>
> Therefore, the District Court concluded "that Connie did not sustain her burden of proof that Mike's gambling dissipated the marital estate."

¶24    A review of the record and trial transcript does reveal some speculative testimony regarding Mike's alleged gambling expenditures. Connie proffered a bank statement into evidence which identified cash withdrawals from two casino ATMs. However, Connie testified that she had no direct knowledge of what those funds were used for. Therefore, we conclude that the record does not contain the "substantial evidence" necessary to warrant a finding of dissipation. Accordingly, the District Court did not abuse its discretion in determining that Mike's activities did not dissipate the marital estate.

## ISSUE FOUR

¶25    Did the District Court err when it included the full value of the parties' condominium within the marital estate?

¶26    Prior to the separation, Connie and Mike owned a condominium in which they resided. For purposes of dividing the marital estate, both parties valued the condominium at $57,000. The District Court qualified this condominium as a marital asset and included its entire value within the marital estate. Connie claims that she contributed $32,000 of her premarital assets toward the purchase of the condominium. Connie maintains that this contribution should not have been included in the marital estate. Thus, for purposes of calculating the marital estate, Connie argues that the District Court should have valued the condominium at approximately $25,000.

¶27    Mike argues that he also contributed premarital funds toward the purchase of the condominium. Mike derived these purported funds from the ultimate disposition of rental properties which he acquired prior to the marriage. The sale of these rental properties occurred after the marriage and Connie insists

that marital income was used to satisfy the loan on the properties. Nevertheless, the sale produced $25,000 which Mike applied to the mortgage on the condominium. Mike claims that the sale's proceeds constituted a premarital asset. As such, he argues that the parties' mutual contributions of premarital assets toward the purchase of the condominium essentially cancelled each other out. Accordingly, Mike argues that the District Court properly included the entire value of the condominium in the marital estate.

¶28 Essentially, this issue implicates a factual dispute which the District Court neglected to address. Mike contends that his $25,000 contribution toward the condominium purchase was premarital in nature and Connie testified that marital income was intermingled within the proceeds. However, the District Court entered no findings with regard to the purchase of the condominium. It simply concluded that the "[c]ondominium is a marital asset valued for marital estate purposes at $57,000.00."

¶29 If Mike's $25,000 contribution to the condominium was a premarital asset, then its application to the purchase would essentially nullify Connie's contribution of her premarital assets. Therefore, the District Court would have been justified in including the entire value of the condominium within the marital estate. However, Connie testified that the parties used marital income to some extent to pay off the rental properties' loan. If Mike in fact used marital income to acquire the rental properties free and clear then certainly the proceeds would not retain the premarital asset designation. However, the District Court entered no findings which traced the funds utilized in the purchase of the condominium. Therefore, we remand this issue to the District Court to enter appropriate findings of fact and conclusions of law to support its ultimate determination.

## ISSUE FIVE

¶30 Did the District Court err when it characterized the "LeFever Contract" as Mike's premarital property?

¶31 In February of 1998 Mike submitted an application for a commercial loan which Connie offered into evidence at trial. On the application, Mike included a contract ("LeFever Contract") for the sale of real property as one of his assets under the heading "Receivables Due to Me on Mortgages and Contracts I Own." Mike indicated that the LeFever Contract was for a ten-year term with a balloon payment due in 2006. Mike established the market value of the contract at $60,000 in 1998. As Mike executed the LeFever Contract during the marriage, Connie insists that it should be included in the marital estate.

¶32 At trial Mike testified that he had no idea what the LeFever Contract was or why it was included in the loan application. Essentially, Mike claims that the contract never existed. The District Court concluded that the LeFever Contract did exist and valued the asset at $60,000. Further, the District Court concluded:

> [T]his asset is a result of the sale of two premarital houses belonging to Mike and no evidence exists that Connie made marital contributions to these assets. Therefore, the Court concludes this asset is not part of the marital estate.

¶33     A review of the record and trial transcript reveals no evidence that the LeFever Contract resulted from the sale of two premarital houses.  The loan application simply describes the subject property as "2 houses."  Further, Mike not only failed to offer evidence as to the assets' premarital nature, but he denied their very existence.  Presumably, the District Court found the statements in the loan application more credible than Mike's testimony as to the existence of the contract.  However, once the District Court found that the LeFever Contract existed, it entered no findings qualifying the contract as a premarital or marital asset.  In fact, on appeal, Mike concedes that "the District Court erred in finding that the LeFever Contract . . . was the result of the sale of two premarital houses."  For the foregoing reasons, we hold that the record does not contain substantial, credible evidence which supports the District Court's determination regarding the premarital nature of the LeFever Contract.  Accordingly, we remand this issue to the District Court to enter supplemental findings of fact and conclusions of law regarding the classification of the LeFever Contract as premarital or marital property.

¶34     Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER

Justice Jim Rice concurring in part and dissenting in part.

¶35     I concur with the Court's holding on issues one, three, four and five, but dissent from the holding on issue two.

¶36     Mike had pre-marital real property interests, the debt for which was reduced substantially during the course of the marriage.  Some of this secured debt was reduced by proceeds from the sale of Mike's properties, but most of the debt was reduced by marital income, which had been enhanced by the parties' express agreement to live frugally.  The District Court felt constrained to conclude that "to award Connie a portion of the debt reduction would be to award Connie more than the marital estate contains," and therefore, she was "not entitled to compensation related to Mike's debt reduction during the marriage."
  The Court affirms this holding as consistent with the notion that the District Court cannot "distribute what is not there."

¶37     It is neither correct to state that awarding a portion of Mike's pre-marital real property to Connie would be to award more than the marital estate contains, nor that "there is nothing there."  A sizeable

increase in equity of this real estate–a hard asset–is there, which was accomplished by application of marital income to the secured debt on the property. In Re the Marriage of Lippert (1981), 192 Mont. 222, 627 P.2d 1206, is therefore inapplicable. The District Court correctly stated the standard here, that if "the non-acquiring spouse has in some way contributed to the maintenance or preservation of the other spouse's pre-acquired or gifted property, the non-acquiring spouse is entitled to an equitable share of such property
which is attributable to his or her efforts," citing In Re the Marriage of Smith (1995), 270 Mont. 263, 270, 891 P.2d 522, 525, and Bradshaw v. Bradshaw (1995), 270 Mont. 222, 229-30, 891 P.2d 506, 611, but failed to apply it.

¶38    Granted, Connie's contributions to the marital income, i.e., the dental practice, by which the debt was reduced, may not have been significant. However, the District Court determined that "Connie did make marital contributions to the dental practice by her work in the office." Thus, it was error for the District Court to conclude that it was powerless to equitably apportion any of Mike's pre-marital property to compensate Connie for whatever contribution she had made. I would remand for a determination of those contributions as they relate to the reduction of Mike's secured debt, and award Connie a share of the real property in compensation therefor.

/S/ JIM RICE