No. 90-604

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF JOHN L. McKEON,

     Petitioner and Respondent,

  and

DIXIE McKEON,

     Respondent and Appellant.

FILED

FEB 11 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark P. Sullivan, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Deirdre Caughlan, Dunlap & Caughlan, Butte, Montana.

     For Respondent:

          Daniel R. Sweeney, Attorney at Law, Butte, Montana.


Submitted on Briefs:  December 4, 1991

Decided:  February 11, 1992

Filed:

_____
               Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This matter comes to us on appeal from the District Court of the Second Judicial District, Silver Bow County, Montana, regarding respondent John L. McKeon and appellant Dixie McKeon's marriage of thirty-three years which was dissolved by final decree of the District Court in September of 1979. Since that time there have been two modifications of the original property settlement agreement and this matter concerns the District Court's judgment of November 8, 1990, wherein it relieved the respondent of his obligation to pay maintenance of $300 per month to the appellant for life. We reverse and remand to the District Court.

The background facts of this marriage are as follows:

John L. "Luke" McKeon (Luke) and Dixie McKeon (Dixie) married in 1946. Four children were born to the couple during the course of the marriage with only the youngest, John, being seventeen at the time of the dissolution in 1979, and had therefore not reached the age of majority. Prior to the dissolution of the marriage, on August 20, 1979, Luke and Dixie entered into a property settlement agreement which was incorporated into the final decree of dissolution entered by the District Court on September 12, 1979.

Luke pursued a legal career and was admitted first to the bar in 1951 and again in 1982. At the time of the hearing on his petition to be relieved of Dixie's maintenance payments, Luke was involved in a professional corporation practicing law with his son, Timothy.

2

Dixie was employed outside of the home only during the last few years of the marriage. Evidence at trial indicated that Dixie had limited education, no professional training, has had long-term emotional and health problems and at the time of the filing of these briefs was 67 years old.

Luke petitioned the court for the dissolution in 1979 and Dixie signed the petition and property settlement agreement which had been prepared by Luke. In 1980 Dixie moved to set aside the decree on the grounds of undue influence and fraud alleging that she was in poor health and was unduly influenced by the circumstances affecting her ability to enter into the property settlement agreement. In its Findings of Fact and Conclusions of Law dated June 15, 1981, the court upheld the agreement. However, the court found that the property settlement agreement had been voluntarily modified by Luke and found that Luke's obligation to pay the rent on the property in which Dixie lived would be "continuing unless the Respondent remarries, and should the rent of the Respondent be increased, that cost shall be borne by Petitioner and such sum shall be deemed support and maintenance payments to Respondent."

The original property settlement agreement also provided, in Paragraph III, that following the payment of the mortgages on some business properties that the parties owned during the marriage that "the wife shall receive the net income for said property _for life_." (Emphasis added.)

Dixie never received an income under the provisions of

Paragraph III of the property settlement agreement, and in 1984 the parties amended the property settlement agreement by striking that paragraph in its entirety and substituting the following language:

> That the Wife shall receive as maintenance for life the sum of $300.00 per month from the Husband. That this sum shall commence in the month of February, 1984, and shall continue to be paid to the Wife each and every month <u>for life</u>. [Emphasis added.]

The amendment to the Property Settlement Agreement contained language permitting Luke to take the maintenance deduction consistent with the provision for alimony under the Internal Revenue Code as a deduction and continued:

> However, it is specifically understood that the maintenance herein provided shall continue for life (barring the prior death of the Husband) regardless of the future marital status of the Wife.

In 1989, Luke unilaterally discontinued paying the $300 monthly maintenance payments. Dixie filed a motion and citation in August 1989, to compel payment. In lieu of a hearing in this matter, Luke made maintenance payments through the month of September 1989. In November 1989, Luke again unilaterally discontinued paying the maintenance and no payments have been made since that time. In December 1989, Luke filed several documents including: a "Motion For Order To Show Cause," "Supplemental Affidavit," "Memorandum In Support Of Petition To Modify Support Payments" and a "Petition To Amend Order Of Court Relative To Support Payments." This matter was heard on June 25, 1990. On the same date, Dixie submitted "Proposed Findings Of Fact And Conclusions Of Law." The parties were given ten additional days to file "Supplemental Findings And Conclusions." In October 1990,

4

Dixie's attorney wrote to the presiding Judge, Mark P. Sullivan, to check on the status of the case. This letter was copied to counsel for Luke and within approximately one week counsel received, on October 31, 1990, the "Supplemental Findings Of Fact, Conclusions Of Law And Judgment." On November 2, 1990, Dixie filed a "Motion And Brief To Strike Petitioner's Proposed Findings Of Fact, Conclusions Of Law And Judgment" as untimely as well as objecting to several specific findings as not conforming to the evidence.

Thereafter, on November 8, 1990, the District Court filed its Findings of Fact, Conclusions of Law and Judgment relieving Luke of the responsibility of paying maintenance of $300 per month to Dixie for the term of her life.

The issues presented to this Court for consideration are:

1. Whether the District Court erred in creating a new contract from the amendment to property settlement agreement.

2. Whether the District Court erred in failing to allow inquiry into the original property settlement agreement.

3. Whether Luke presented credible financial evidence to justify modification of the terms of the amended property settlement agreement.

The first issue presented is whether the District Court erred in interpreting the property settlement agreement on maintenance "for life." In the words of the property settlement agreement these are words of contract. Section 40-4-201(5), MCA (1989), provides that marital or property settlement agreements are governed by the laws of contract. Quinn v. Quinn (1981), 191 Mont.

133, 136, 622 P.2d 230, 232. Here, the maintenance provision was a contract between the parties and was for *life*, not until Dixie reached any age or received any specific benefits.

We find Luke's testimony, that it was "my understanding" or it was a "belief on my part" that the maintenance would continue until social security became effective, to be incredible. However, when asked by counsel of his definition of "for life" the following testimony was taken:

> Q. [By Appellant's counsel] Would you please tell me what "for life" means to you?

> A. [By Luke] For life means *for my life or her life*. [Emphasis added.]

By this response it is clear that Luke, who was a practicing attorney, understood what his obligation was under the terms of the maintenance agreement. The words "for life" are not open to any other interpretation than the plain meaning of these words on their face. Sections 28-3-303, 28-3-401 and 28-3-501, MCA, are important in reviewing the interpretation of this contract. Section 28-3-303, MCA, provides that the writing generally determines intention:

> When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this chapter.

Here the language of the contract is plain and unambiguous. The language alone controls and there is nothing for the Court to interpret or construe. Payne v. Buechler (1981), 192 Mont. 311, 317, 628 P.2d 646, 650.

This Court has held in numerous cases and the law is well established that where there is no ambiguity the court is without

6

power to insert new provisions into the contract. See City of Billings v. Public Serv. Comm'n (Mont. 1981), 631 P.2d 1295, 1307, 38 St.Rep. 1162, 1173. In Danielson v. Danielson (1977), 172 Mont. 55, 58, 560 P.2d 893, 895, this Court held that it is the duty of the district court to enforce contracts not to make new ones for the parties, however unwise the terms may appear.

The second issue concerns itself of whether the District Court erred in not allowing inquiry into the original property settlement agreement. It would appear from the record that the trial judge, in refusing to allow evidence or consideration to be given as to the original property settlement agreement and as to the basis for the original property settlement agreement, was concerned only with the present status of the parties rather than the intent of the parties entering into the property settlement agreement. The very fact that the District Court Judge concluded that the payment of social security benefits to Dixie was a sufficient reason to eliminate the obligation already in existence in the property settlement agreement, proves the court did not consider that there is no mention in the property settlement agreement eliminating maintenance at any future time upon the receipt of social security payments to Dixie.

Had the court allowed inquiry into the original property settlement agreement and the 1984 modification, it would have observed that the 1984 modification gave Dixie maintenance for life in lieu of property from which she was to receive income. Here the maintenance provision of the agreement replaced a property

7

settlement and the agreement was quasi-maintenance and quasi-property. Dixie was entitled to maintenance especially when the court could have heard evidence that she was granted no property under the original property settlement agreement with the exception of some income from office property of the parties which she testified she never received. As noted the provision for receiving the above income from office property of the parties was modified out of the original agreement and Luke received all other property that the parties had, including any other income consuming or income producing property. We believe that the inquiry into the original property settlement agreement was appropriate because maintenance was intricately linked to property settlement. See In re the Marriage of Robertson (1989), 237 Mont. 406, 773 P.2d 1213. Here Dixie gave up the right to property in exchange for maintenance and the District Court erred in not allowing inquiry into the parties' original property settlement agreement and in modifying maintenance payments without considering necessary information.

The third issue concerns whether Luke presented substantial credible financial evidence to justify the modification of terms that would amend the property settlement agreement.

Luke presented testimony that he had a reduced income from his professional corporation, but we note that he refused to turn over pertinent financial data such as the corporation's income tax returns. In addition, he claimed to be supporting the parties' children. We note the fact that the youngest of the children,

8

John, was seventeen years of age in 1979, the time the parties' marriage was dissolved; and was twenty-eight years old in 1990, the time that the husband still claimed to be supporting him. We note further, that the husband's tax returns provided in the interrogatories reflected that his 1989 wages were approximately $40,000; that in 1988 his adjusted gross income was $57,901 including dividend income from his professional corporation in the amount of $5,566; that in 1987 his adjusted gross income reflected a sum of $72,565; and his 1986 adjusted gross income was $47,274. While Luke reached the age of 65 in 1990, there was no substantial evidence showing his medical status or his inability to provide finances to live up to his $300 per month obligation to Dixie as provided for in the dissolution decree.

Here, Luke drew up the property settlement agreement and while he was not satisfied with it, it is clear that he failed to provide substantial credible evidence to allow the maintenance provision to be modified.

This case is reversed and remanded to the District Court in conformance with this Opinion.

John Conway Harrison
Justice

We concur:

_____

_____

_____
Justices

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

It is first necessary to point out that the majority adopts as true allegations in the appellant's brief which are not supported by the record.

For example, the majority opinion states that the original property settlement agreement provided for income to the wife from property owned by the parties. Paragraph III of the original settlement agreement, however, actually pertains to property that was conveyed to the children during the marriage. It provided that after the mortgages were paid off on those properties in 1984 and 1985 the net income would be paid to the wife for life.

However, before those mortgages were ever paid, the wife, while represented by an attorney, proposed an amendment to Paragraph III which substituted the $300 per month maintenance payment which was the subject of this petition for modification.

The majority opinion states:

> Had the court allowed inquiry into the original property settlement agreement and the 1984 modification, it would have observed that the 1984 modification gave Dixie maintenance for life in lieu of property from which she was to receive income. Here the maintenance provision of the agreement replaced a property settlement and the agreement was quasi-maintenance and quasi-property. . . . Here Dixie gave up the right to property in exchange for maintenance and the District Court erred in not allowing inquiry into the parties' original property settlement agreement and in modifying maintenance payments without considering necessary information.

11

The original property settlement agreement did not give Dixie property from which she was to receive income. It simply provided that at some future date she would receive income from property owned by her children after her husband paid off the mortgage. There is no record regarding the amount of net income that was to be expected. The 1984 amendment simply substituted one form of maintenance payment ($300 per month) for a different form of maintenance payment (an unspecified amount of net income). At the time of the 1984 amendment Dixie was represented by counsel. In fact, it was her counsel who proposed the form of the 1984 amendment. It is assumed that the amendment was in her best interest and she understood all the legal implications of maintenance payments.

One of the legal implications of receiving maintenance is that pursuant to § 40-4-208(2)(b), MCA:

> Whenever the decree proposed for modification contains provisions relating to maintenance or support, modification under subsection (1) may only be made:
>
> (i) upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable . . . .

In this case, the District Judge, after listening to testimony from Luke and Dixie, and after receiving documentary evidence regarding their financial circumstances, found as a fact:

> 11. That there has been a showing of changed conditions as required by MCA 40-4-208 so substantial and continuing as to make the terms of the Property Settlement Agreement incorporated in the decree now unconscionable.

The majority has set aside that finding of fact. However, pursuant to Rule 52(a), M.R.Civ.P., "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

After reviewing the transcript of Luke's and Dixie's testimony, I conclude that the District Court's finding of a change in circumstances which made the prior maintenance payments unconscionable was not clearly erroneous.

Subsequent to the time that the parties entered into the maintenance agreement, Dixie qualified for social security benefits in an amount equal to that amount being paid for maintenance. Therefore, her income increased.

On the other hand, Luke's health and financial condition both deteriorated dramatically.

From 1987 until 1989 Luke's annual income declined steadily from $72,000 to $42,000. The evidence was that in the first half of 1990 his income had declined even further due to health problems which included a serious heart condition, colitis, an ulcer, shoulder surgery, and impending surgery on his neck. It was anticipated that his income would decline even further based on his retirement at the age of 65 on October 7, 1990. After that time his primary income was to be from social security retirement benefits and from the public employees retirement system at $870 and $570 per month respectively.

13

In addition, Luke owed the federal government $129,000 for taxes, and had to borrow money from a financial institution in order to make payments on that debt. At the time of trial, he had a debt over and above his tax debt in the amount of $80,000. His monthly expenses were $3,535, and his estimated monthly income from all sources was $2,382.

Dixie's living expenses, including food, shelter, electricity, and utilities were provided for at the home where she resided. The cost of residing at the home was paid by her son in exchange for office space provided to him by his father. The fact that these expenses were provided enabled Dixie to live within the amounts received as social security and workers' compensation benefits. Although the proportion is uncertain, the evidence was that any additional amounts paid to her by Luke would simply increase the amount charged for her living expenses at the home where she resided.

This is not a case of the District Court rewriting a contract to provide for something beyond the original terms of the agreement. Neither is this a case where the court failed to give proper consideration to the earlier distribution of property.

This is simply a case of the parties substituting one form of maintenance payment for an earlier more uncertain form of payment and a modification of that obligation, based on a change in circumstances. There was absolutely no property given up by Dixie in exchange for the amended maintenance provision, and there was no

14

reason to consider circumstances prior to the 1984 amendment in the District Court's determination of whether circumstances had changed since that amendment.

For these reasons, I would affirm the judgment of the District Court.

_____
Justice