No. 92-053

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF
ROBERT C. WOODFORD,

      Petitioner and Appellant,

  and

LORRAINE L. WOODFORD,

      Respondent and Respondent.



APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          R. Russell Plath, Halverson, Sheehy & Plath, P.C.,
Billings, Montana

      For Respondent:

          Damon L. Gannett, Gannett & Ventrell, Billings,
Montana


Submitted on Briefs:  June 4, 1992

Decided:  October 15, 1992

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

This is an appeal from an order of the Thirteenth Judicial District Court, Yellowstone County, denying appellant Robert C. Woodford's motion to enter a Qualified Domestic Relations Order.

We affirm.

The following issues are raised on appeal.

1. Does the District Court's "Order On Petitioner's Motion to Enter a Qualified Domestic Relations Order" constitute a final judgment or order from which an appeal may be taken?

2. Do retirement benefits earned and contributed to a retirement account after the date of the decree of dissolution become part of the marital estate?

The parties were married in Reno, Nevada, on October 17, 1952. Four children were born to the marriage, all of whom are now emancipated. Robert filed for dissolution on May 25, 1989. Respondent Lorraine L. Woodford filed her response on July 20, 1989.

On December 29, 1989, the parties entered into a separation agreement. The separation agreement contained the following provision:

> 8. MAINTENANCE PAID TO WIFE: The parties agree that the Husband will make monthly maintenance payments to the Wife in the amount of $500.00 per month until the Husband retires from the United States Navy. Upon the Husband taking full retirement, the monthly federal government retirement benefit paid to the Husband shall be split equally with the Wife for the balance of her life. It is agreed between the parties that when the Wife receives an increase in her Social Security Retirement benefit, the monthly amount of maintenance

2

paid to the Wife shall be reduced by the same amount as the Wife's Social Security benefit has been increased.

Also on December 29, 1989, the District Court entered its findings of fact, and conclusions of law and decree of dissolution. The court approved of the parties' separation agreement, found it not unconscionable, and incorporated it into the court's decree.

On September 26, 1991, Robert filed a Motion for Entry of a Qualified Domestic Relations Order (QDRO). A QDRO allows someone other than the person who earned a federal pension to directly receive a part of that pension. Along with the motion, Robert filed a proposed QDRO which contained the following provision:

> Lorraine L. Woodford is awarded an amount equal to fifty percent (50%) of the monthly retirement benefits attributable to the Participant's CSRS Participation through December 29, 1989. At her option, the Assignee can have her payments begin at any date after the Participant is eligible to receive benefits under the CSRS.

> The amount of Lorraine L. Woodford's monthly benefit shall be reduced by the same amount as her social security benefit has been increased since December 29, 1989. Pursuant to Section 831.1705 of the CSRS regulations the Assignee's December 29, 1989 social security earnings of two hundred twenty five dollars ($225.00) is the basis for calculating reduction of the Assignee's monthly benefit.

On December 20, 1991, the District Court entered its order. The court concluded that the proposed QDRO did not conform with the parties' separation agreement and ordered Robert to submit a QDRO which conformed with the separation agreement. Robert never filed another proposed QDRO, and instead filed a notice of appeal with this Court.

3

I.

Does the District Court's "Order On Petitioner's Motion to Enter a Qualified Domestic Relations Order" constitute a final judgment or order from which an appeal may be taken?

Lorraine contends that the District Court did not intend that its order denying Robert's motion to enter a QDRO be considered a final order. We disagree.

Rule 1(b)(2), M.R.App.P., grants an appeal "from any special order made after final judgment . . . ." In Butler v. Brownlee (1969), 152 Mont. 453, 451 P.2d 836, this Court held that an order modifying child custody and support award in a divorce decree is a "special order made after a final judgment." The decree of dissolution entered on December 29, 1989, was a final judgment in this case. Section 40-4-108(1), MCA, provides that a decree of dissolution is "final when entered, subject to the right of appeal." In its order of December 20, 1991, the District Court ordered Robert to submit within twenty days a QDRO that conformed to the order denying Robert's motion to enter a QDRO. Although on its face the order appeared interlocutory, the order constituted a "special order made after final judgment" and failure to file a notice of appeal within 30 days would have closed Robert's right to an appeal. If the effect of the order is to destroy an appellant's right to an appeal, then that order, though interlocutory should be appealable. Bowen v. True Valu Stores, Inc. (1987), 229 Mont. 84,

4

745 P.2d 330. We hold that the appeal is properly before this Court.

## II.

Do retirement benefits earned and contributed to a retirement account after the date of the decree of dissolution become part of the marital estate?

We have stated that retirement benefits are part of the marital estate, and therefore, constitute marital property. In re Marriage of Rolfe (1985), 216 Mont. 39, 699 P.2d 79 (Rolfe I). Under Montana law, property settlement agreements are considered contracts, and therefore. must be construed under the law of contracts. In re Marriage of Quinn (1981), 191 Mont. 133, 622 P.2d 230; Section 40-4-201(5), MCA. If the language of a property settlement agreement is clear and explicit, it controls the agreement's interpretation. Quinn, 622 P.2d at 232. This case is analogous to a recent case decided by this Court in In re Marriage of McKeon (Mont. 1992), 826 P.2d 537, 49 St. Rep. 127. In that case, the District Court ruled that the property settlement agreement provided that the husband pay maintenance to the wife for the remainder of her life regardless of whether she remarried. Husband appealed the District Court's interpretation of the separation agreement. We affirmed the District Court's interpretation that the contract contained plain and unambiguous language that maintenance was to extend for the remainder of the wife's life.

5

Section 28-3-303, MCA, provides that the writing contained in the contract generally determines the intention of the parties:

> When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this chapter.

Section 40-4-201(3), MCA, governs separation agreements, and the standard that would warrant a reopening of a judgment is a finding of unconscionability by the District Court. Robert fails to provide any facts, or to allege on appeal, that the property settlement agreement is unconscionable. Instead, Robert argues that his retirement benefits earned and contributed to his retirement account after the date of the decree dissolving the marriage are not part of the marital estate. This is not what the parties agreed to in their property settlement agreement.

The plain and unambiguous language of the contract provided that Robert's monthly federal government retirement pension "shall be split equally with the Wife for the balance of her life." It does not state on what date Robert's earnings or contributions to his retirement fund should not be taken into account for the division and distribution of retirement payments. The original agreement only speaks for deductions in maintenance payments for social security increases and not for deductions in retirement benefits.

The parties were represented by counsel and understood the terms of the agreement. See generally, In re Marriage of Laskey (Mont. 1992), 829 P.2d 935, 49 St. Rep. 322. Lorraine is entitled

to the benefit of her bargain. Robert's proposed QDRO was nothing more than an attempt to modify the original separation agreement.

This Court has held that where there is no ambiguity, the court is without power to insert new provisions into the contract. McKeon, 826 P.2d at 540. We have also held that "it is the duty of the district court to enforce contracts not to make new ones for the parties, however unwise the terms may appear." McKeon, 826 P.2d at 540. We hold that the District Court did not err in concluding that the proposed QDRO did not conform to the separation agreement.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

October 15, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

R. Russell Plath
HALVERSON, SHEEHY & PLATH, P.C.
P.O. Box 1817
Billings, MT 59103-1817

Damon L. Gannett
GANNETT & VENTRELL
P.O. Box 1375
Billings, MT 59103-1375

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy