No. 98-587

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 250

IN RE THE MARRIAGE OF

JANET FERN PFENNIGS,

        Petitioner, Respondent,
              and Cross-Appellant,

and

JAMES MICHAEL PFENNIGS,

        Respondent, Appellant,
              and Cross-Respondent.

FILED

[illegible] 1999

[illegible]
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighth Judicial District,
                      In and for the County of Cascade,
                      The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

    For Appellant and Cross-Respondent:

        Richard L. Parish; Harlen, Thompson & Parish, Helena, Montana

    For Respondent and Cross-Appellant:

        K Dale Schwanke; Jardine, Stephenson, Blewett & Weaver, Great Falls,
        Montana

Submitted on Briefs: April 29, 1999

Decided:   October 21, 1999

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 James M. Pfennigs (James) appeals and Janet Fern Pfennigs (Janet) cross-appeals from the Findings of Fact, Conclusions of Law and Order entered by the Eighth Judicial District Court, Cascade County, modifying James' child support and interpreting the parties' property settlement agreement (Agreement). We affirm.

¶2 We restate the issues on appeal and cross-appeal as follows:

¶3 1. Did the District Court err in concluding that the Agreement's retirement benefits provision clearly entitled Janet to 50% of James' retirement benefits at the time he retires?

¶4 2. Did the District Court abuse its discretion by awarding increased child support retroactive to January of 1997 rather than to November of 1995?

¶5 3. Did the District Court err in concluding that there was no sufficient basis to reform the Agreement to require James to provide life insurance?

¶6 4. Did the District Court err in concluding that neither party prevailed and in denying Janet attorney fees and costs?

¶7 5. Is Janet entitled to attorney fees and costs on appeal?

*BACKGROUND*

¶8 On January 8, 1992, the District Court entered a Decree of Dissolution of Marriage (Decree) dissolving James and Janet's marriage. The Decree incorporated the parties' Agreement which--among other things--divided their assets, including James' retirement benefits.

2

¶9 In November of 1995, Janet moved for modification of the amount of James' child support, contending that substantial and continuing changes in circumstances made the current level of child support unconscionable. Janet did not actively pursue that motion, however, until she requested a scheduling conference in December of 1996. In April of 1997, Janet filed an additional petition requesting reformation of the Agreement to include an alleged oral agreement that James would continue life insurance on himself with her as the designated beneficiary. She conceded that life insurance was not part of the Agreement, but argued it was a collateral arrangement which was part of the overall "transaction" of the marital dissolution. Janet also requested the District Court to interpret the retirement benefits provisions in the Agreement, contending she should receive 50% of James' retirement benefits calculated from his actual retirement date rather than from the time of the dissolution. Finally, she raised the issue of attorney fees in the proposed findings of fact she submitted to the court.

¶10 After a bench trial in May of 1997, the District Court entered its findings of fact, conclusions of law and order. It determined that: changed circumstances warranted an increase in child support, but made the increase retroactive to January of 1997 rather than to the time of Janet's motion to modify in November of 1995; no sufficient basis existed to reform the Agreement to require James to maintain a life insurance policy naming Janet as the beneficiary; the Agreement's retirement benefits provision clearly entitled Janet to 50% of James' retirement benefits calculated at the time of his retirement; and neither party could

3

be considered the prevailing party and, as a result, both parties would pay their own attorney fees. James appeals and Janet cross-appeals.

*DISCUSSION*

¶11 **1. Did the District Court err in concluding that the Agreement's retirement benefits provision clearly entitled Janet to 50% of James' retirement benefits at the time he retires?**

¶12 The retirement benefits provision in the parties' Agreement provides:

> Retirement Benefits. We agree we each should be awarded 50% of [James'] retirement benefits. Upon retirement, [James] agrees to effectuate a second warrant to be [sic] sent to [Janet].

In this regard, the District Court concluded that

> [t]he provision of the Agreement relating to retirement benefits is clear. It says [Janet] is entitled to one-half of the benefits. It clearly contemplates separate warrants at retirement. It does not indicate it is based on the account balance at the time of the Agreement. There was no calculation of such balance. Accordingly, this division is based on all benefits accrued or to accrue.

Accordingly, the court ordered that "[James'] retirement benefits pursuant to the [retirement] plan in effect when the Marital Settlement Agreement was signed, or any successor plan, shall be divided such that [Janet] or her heirs shall be paid one-half of the benefits [James] or his heirs or estate qualify for." James contends that the District Court erred in concluding the retirement benefits provision was unambiguous in entitling Janet to 50% of his retirement benefits at the time he retires.

4

¶13   Montana courts interpret property settlement agreements associated with marital dissolutions in accordance with the law of contracts. *Heath v. Heath* (1995), 272 Mont. 522, 527, 901 P.2d 590, 593 (citations omitted); § 40-4-201(5), MCA. "Whether or not an ambiguity exists is a question of law for the court to decide. Only where an ambiguity exists may the court turn to extrinsic evidence . . . to determine the intent of the parties." *Doble v. Bernhard*, 1998 MT 124, ¶19, 289 Mont. 80, ¶19, 959 P.2d 488, ¶19 (citation omitted). An " 'ambiguity exists when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations.' " *Doble*, ¶19 (quoting *Wray v. State Compensation Ins. Fund* (1994), 266 Mont. 219, 223, 879 P.2d 725, 727). We review a district court's legal determinations to determine whether its interpretation of the law is correct. *Stutzman v. Safeco Ins. Co. of America* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34 (citations omitted).

¶14   James argues that the retirement benefits provision is ambiguous because it is subject to two different interpretations. He agrees that it may be read as entitling Janet to 50% of all of his retirement benefits, but he contends that it also can be read as entitling her only to 50% of his retirement benefits at the time of the Agreement.

¶15   James focuses on the first sentence of the retirement benefits provision, which states "[w]e agree we each should be awarded 50% of [James'] retirement benefits." He contends that the sentence is "set in the present tense" and observes that the Agreement does not expressly provide that Janet will receive any future accumulations. As a result, according

5

to James, the implication of the provision is that Janet's share of his retirement benefits was to be based on those benefits as of the time of the Agreement.

¶16 The language on which James relies is, indeed, in the present tense. It could hardly be otherwise, however, since it reflects that the parties were agreeing about the provision at the time they entered into the Agreement. Thus, the tense in which the initial phrase of the retirement benefits provision is set has no bearing on the substance or meaning of the provision.

¶17 James also relies on *In re Marriage of Woodford* (1992), 254 Mont. 501, 839 P.2d 574, in contending that the District Court erred in concluding the retirement benefits provision was not ambiguous. In *Marriage of Woodford*, 254 Mont. at 503, 839 P.2d at 575, we considered a similar provision which provided in part:

> Upon the Husband taking full retirement, the monthly federal government retirement benefit paid to the Husband shall be split equally with the Wife for the balance of her life.

There, we determined the language clearly and unambiguously divided the husband's full retirement benefits equally at the time he receives them. *Marriage of Woodford*, 254 Mont. at 505, 839 P.2d at 576. James argues that, because the provision before us in the present case is not as clear as the provision in *Marriage of Woodford*, the retirement benefits provision at issue is ambiguous. However, nothing in *Marriage of Woodford* states or even suggests that the language at issue there is the only language which can clearly and

6

unambiguously entitle a spouse to an equal share of retirement benefits to be paid at the time of retirement.

¶18    Finally, James contends the retirement benefits provision should be read by noting its placement in the Agreement as a whole. He points out that the retirement benefits provision is in the section dividing the marital assets and asserts that, as a result, it must be limited to his retirement benefits acquired during the marriage. This contention is simply incorrect.

¶19    First, the provision clearly states that Janet will receive 50% of James' retirement benefits. It does not limit the benefits which will be divided from the standpoint of either time or amount. Second, the retirement benefits provision is located in the same section of the Agreement as the real property provision which divides the proceeds of the family home equally at the time of sale in the future. Thus, both provisions contemplate a future division of a future--and as yet unascertained--amount. Moreover, Janet remains responsible for the mortgage payments of the real property until the property is sold, thereby building increasing equity in the home which will be divided equally upon sale. In the same way that Janet's continuing "contributions" to the marital estate via the mortgage payments will increase that estate over time with an equal division in the future, James' continuing "contributions" through accruing retirement benefits into the future will increase the marital estate with an equal division in the future. As a result, the two provisions are correlative. Therefore, reading the Agreement as a whole further supports the District Court's conclusion that the

7

retirement benefits provision is clear and unambiguous rather than supporting James' contention that doing so establishes an ambiguity.

¶20 We conclude that the retirement benefits provision is not reasonably subject to two different interpretations and, as a result, it is clear and unambiguous. We hold, therefore, that the District Court did not err in concluding that the Agreement's retirement benefits provision clearly entitled Janet to 50% of James' retirement benefits at the time he retires.

¶21 **2. Did the District Court abuse its discretion by awarding increased child support retroactive to January of 1997 rather than to November of 1995?**

¶22 The District Court granted Janet's motion to modify child support and increased James' child support from $308 to $418 retroactive to January of 1997. Janet contends the District Court erred by failing to make the increased child support award retroactive to November of 1995, when she filed her motion to modify.

¶23 "Whether child support is awarded retroactively to the date of notice of a motion for modification is clearly within the discretion of the district court." *In re Marriage of Hill* (1994), 265 Mont. 52, 59, 874 P.2d 705, 709 (citation omitted); *see also* § 40-4-208(1), MCA. We review discretionary rulings to determine whether the court abused its discretion. *In re Marriage of Pearson*, 1998 MT 236, ¶30, 291 Mont. 101, ¶30, 965 P.2d 268, ¶30 (citation omitted). In doing so, "we look to whether the court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Marriage of Pearson*, ¶30 (citation omitted).

¶24    Here, the District Court found that the parties agreed that child support effective in January of 1997 should be $418 and awarded that amount effective at that time. It also observed that retroactive support is a discretionary matter and determined that January of 1997 was "a fair and equitable time" for the increased child support to take effect. The court provided no further explanation for its decision, but--on this record--it may have taken into account Janet's failure to prosecute her motion for modification of child support from the time she filed it in November of 1995 until her request for a scheduling conference in December of 1996.

¶25    Janet contends the District Court abused its discretion by failing to make the increased child support retroactive to November of 1995 because she had no source of support other than her income and the child support, she was responsible for raising a growing son, she had to refinance the home twice and James had the financial ability to pay increased child support retroactive to November of 1995. We disagree.

¶26    It was within Janet's power to pursue her motion diligently. That she failed to do so, even in light of purportedly dire financial straits, cannot be blamed on the District Court or constitute a basis for determining that the court abused its discretion. Nor is James' ability to pay increased child support retroactive to an earlier date particularly relevant. On this record, we cannot say that the court acted arbitrarily or exceeded the bounds of reason resulting in substantial injustice in determining the retroactive date for increased child support.

9

¶27 We hold, therefore, that the District Court did not abuse its discretion by awarding increased child support retroactive to January of 1997 rather than to November of 1995.

¶28 **3. Did the District Court err in concluding that there was no sufficient basis to reform the Agreement to require James to provide life insurance?**

¶29 During the parties' marriage, James owned a life insurance policy on himself with Janet as the designated beneficiary. Janet testified that, while discussing the terms to be included in the Agreement, James agreed to continue to maintain this insurance policy and name her as the irrevocable beneficiary and that, because James did not want to make Janet the owner of the policy, her attorney decided not to include it in the Agreement. Shortly after the parties' Agreement had been incorporated into the Decree, James executed an Allstate Life Insurance Company Request for Change of Beneficiary form. This form contained a "Remarks" section which stated:

> Designate Janet Pfennigs as the irrevocable beneficiary on this policy. This change is made as part of the divorce agreement between James and Janet Pfennigs.

James subsequently borrowed against the policy and the policy lapsed when James failed to pay the premiums.

¶30 In April of 1997, Janet petitioned the District Court to reform the Agreement to require James to purchase a life insurance policy naming her as the beneficiary. The District Court denied Janet's request, concluding "[n]o sufficient basis exists to require reformation of the Marital Settlement Agreement so as to require Respondent to provide life insurance."

10

Janet asserts error. We review the District Court's conclusion to determine whether its interpretation of law is correct. *See Bradshaw v. Bradshaw* (1995), 270 Mont. 222, 229, 891 P.2d 506, 510.

¶31 Reformation of a contract is an equitable remedy which allows a court to revise a contract to reflect the true intentions of the parties. *See* Black's Law Dictionary 1281 (6th ed. 1990). The grounds for reformation of a contract in Montana include fraud, mutual mistake or unilateral mistake of which the other party knew or suspected. Section 28-2-1611, MCA.

¶32 Janet cites to no authorities on reformation of contracts at all, much less any that establish error by the District Court in denying her request to reform the Agreement. Rule 23(a)(4), M.R.App.P., requires an appellant to cite to authorities supporting the contentions raised on appeal and we regularly decline to address unsupported issues or arguments. *See, e.g., In re Marriage of Huotari* (1997), 284 Mont. 285, 289, 943 P.2d 1295, 1298; *In re Marriage of Lee* (1997), 282 Mont. 410, 421, 938 P.2d 650, 657; *Johansen v. State, Dept. of Natural Resources*, 1998 MT 51, ¶ 24, 288 Mont. 39, ¶ 24, 955 P.2d 653, ¶ 24. Janet having failed to comply with Rule 23(a)(4), M.R.App.P., with regard to her argument that the court erred in refusing to reform the contract, we decline to address that argument further.

¶33 Janet advances other theories, however, and we address them briefly, keeping in mind that the appellant has the duty to establish error by the district court. *See In re Marriage of Doolittle* (1994), 265 Mont. 168, 176-77, 875 P.2d 331, 337. First, Janet contends that the parties obviously had an agreement about maintaining life insurance or James would not

11

have made her the irrevocable beneficiary on his policy. The problem with her contention, however, is that she alleges the oral agreement relating to life insurance predated the Agreement, and the Agreement clearly states that it

> contains the entire intentions of each of us with respect to the division of our property, and the determination of our rights and obligations incident to the dissolution of our marriage. There are no other agreements, oral or written, which have any effect upon the provisions of this AGREEMENT.

Thus, the Agreement negates the existence of a pre-existing oral agreement about life insurance as a matter of law.

¶34 Janet also urges that James is estopped from asserting there was no agreement regarding life insurance because he signed the beneficiary designation form. While her one-paragraph estoppel argument is not well-developed, she essentially contends that by signing the insurance form James promised to designate her the irrevocable beneficiary *and* to keep the policy in place. The form does reflect the irrevocable beneficiary designation; the record does not reflect, however, that James modified the beneficiary designation at any time prior to the lapse of the insurance policy. Moreover, the form does not reflect any promise to keep the policy in effect for any period of time. Thus, on this record, James kept the sole promise reflected by the insurance beneficiary form and this contention need not be addressed further.

¶35 We hold that the District Court did not err in concluding that there was no sufficient basis to reform the Agreement to require James to provide life insurance.

¶36 **4. Did the District Court err in concluding that neither party prevailed and in denying Janet attorney fees and costs?**

12

¶37 In her proposed findings of fact and conclusions of law, Janet requested an award of attorney fees based on the Agreement's provision for attorney fees and costs. The District Court concluded that neither party could be considered the prevailing party and ordered the parties to pay their own attorney fees and costs. Janet asserts that she was the prevailing party and that the District Court abused its discretion in denying her attorney fees and costs.

¶38 Generally, it is within the district court's discretion to award attorney fees and costs. However, when the language of an agreement is clear with regard to fees and costs, a district court is bound by its terms. *In re Marriage of Caras* (1994), 263 Mont. 377, 385, 868 P.2d 615, 620. We review a district court's conclusion to determine whether its interpretation of law is correct. *Bradshaw*, 270 Mont. at 229, 891 P.2d at 510.

¶39 Part XVII of the Agreement, entitled "ATTORNEY FEES AND COSTS," provides in part:

> Future. In the event any action or proceeding must be commenced in order to enforce, modify or interpret any provision of this AGREEMENT, we agree that the Court should award reasonable attorney fees and costs to the prevailing party.

Given this clear attorney fees provision, it is necessary to determine whether the present action is encompassed within the provision and, if so, whether Janet was the prevailing party.

¶40 The issues before the District Court were Janet's petition for reformation of the Agreement to require James to maintain life insurance with Janet as the beneficiary, her motion to modify child support retroactive to November of 1995, and her petition for interpretation of the Agreement's retirement benefits provision. Janet agrees that her

13

petition for reformation of the Agreement does not fall within the Agreement's provision for attorney fees and costs because it did not seek to "enforce, modify or interpret" any provision of the Agreement. Janet's motion to modify child support retroactive to a date certain and her petition for interpretation of the Agreement, on the other hand, clearly fall within the attorney fees provision.

¶41 The question remains whether Janet was the prevailing party on the two issues subject to the Agreement's attorney fees provision. With regard to child support, the parties stipulated at the May 15, 1997, hearing that child support effective January of 1997 should be $418 per month. They continued to disagree, however, with regard to the increased child support being retroactive to an earlier date, with Janet continuing to seek retroactivity to November of 1995. The District Court increased James' child support obligation from $308 to $418 retroactive to January of 1997 in accordance with the parties' stipulation and refused Janet's request for increased child support retroactive to November of 1995. Thus, Janet technically prevailed on part of her motion to increase child support--although via stipulation rather than hearing on the merits--and did not prevail on her request for retroactivity to November of 1995. Janet did prevail on the issue involving an interpretation of the Agreement's retirement benefits provision. Therefore, neither party prevailed altogether on the child support issue and Janet prevailed on the interpretation issue.

¶42 We addressed a similar situation in *In re Marriage of Hahn and Cladouhos* (1994), 263 Mont. 315, 868 P.2d 599. The attorney fees provision in the parties' dissolution

14

agreement provided for attorney fees to the successful party in an action to enforce, modify or interpret the agreement and neither party was totally successful. The district court determined that, under such circumstances, the parties should pay their own attorney fees and costs, and we affirmed. *Marriage of Hahn*, 263 Mont. at 323, 868 P.2d at 604. *Marriage of Hahn* supports the District Court's determination here that neither Janet nor James could be considered the prevailing party for purposes of the Agreement's attorney fees provision.

¶43 We hold, therefore, that the District Court did not err in concluding that neither party prevailed and in denying Janet attorney fees.

¶44 **5. Is Janet entitled to attorney fees and costs on appeal?**

¶45 Janet appears to contend that she is entitled to attorney fees and costs on appeal on two bases. First, anticipating success on all issues on appeal and cross-appeal, Janet seems to suggest that, as a result, she would be entitled to fees and costs even absent the Agreement's provision. Janet has not succeeded on her cross-appeal issues, however. Moreover, while she would be entitled to costs under Rule 33, M.R.App.P., had she been the prevailing party on appeal, she cites to no authority under which she would be entitled to attorney fees on appeal absent consideration of the Agreement's provision, as required by Rule 23(a)(4), M.R.App.P. Therefore, we decline to address this argument further.

¶46 Janet also asserts entitlement to costs and attorney fees on appeal pursuant to the Agreement's provision for costs and fees to the prevailing party. Given our resolution of the appeal and cross-appeal issues above, however, it is clear that neither party prevailed on the

15

issue(s) raised by that party. Conversely, each prevailed on the other's issue(s). Under these circumstances, neither party is totally successful on appeal and, as a result, neither is the prevailing party for purposes of the Agreement's attorney fees provision.

¶47 We conclude that Janet is not entitled to attorney fees and costs on appeal.

¶48 Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

16