FILED

02/02/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0047

DA 20-0047

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 20N

IN RE THE MARRIAGE OF:

CHARLENE G. PAYNE,

        Petitioner and Appellee,

  and

WILLIAM H. PAYNE,

        Respondent and Appellant.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DR 94-83
Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Channing J. Hartelius, Hartelius, Durocher & Winter, PC, Great Falls, Montana

      For Appellee:

           Penni L. Chisholm, Chisholm & Chisholm, P.C., Columbia Falls, Montana

Submitted on Briefs:  December 9, 2020

Decided:  February 2, 2021

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     William H. Payne appeals the December 19, 2019, Order and Opinion, and the February 3, 2020, Judgment, entered in post-judgment proceedings by the Nineteenth Judicial District Court, Lincoln County, granting thirty percent of the net proceeds from the sale of Payne Machinery, Inc. and the property upon which it was situated, to Charlene G. Payne.  We affirm in part, reverse in part, and remand for further proceedings.

¶3     William and Charlene were married on August 13, 1974.  A Final Decree of Dissolution of the marriage was entered by the District Court on September 29, 1995. William and Charlene, each represented by legal counsel, entered into a Property Settlement Agreement (PSA) that was incorporated into the Final Decree of Dissolution. The PSA provided, in relevant part, as follows:

4.  Any and all property acquired by either of the parties hereto from and after January 1, 1994, shall be the sole and separate property of the one so acquiring the same, and each party hereby binds himself or herself to execute any instruments necessary to so provide.
5.  The parties' assets are as follows:
    a.  Payne Machinery, Inc.                                $719,000
    b.  Real Estate: shop area 2.3 acres                        15,000
        • Resident (house and 2 acres)                         91,000

2

- Lot 2 Ponderosa Heights (1.853 acres)         12,000

- Tract ADH (3.99 acres)         30,000

In addition, the parties have vehicles, household goods and miscellaneous personal property.

6. The parties agree to divide their marital property as follows:

    a. To William H. Payne: Payne Machinery, Inc. land and residence.

    b. Charlene Payne: 1988 Toyota Pickup and 1990 Buick.

    c. William H. Payne will pay to Charlene G. Payne the sum of $275,000.00 as follows:

- $50,000.00 in cash immediately

- $225,000 paid at 6% interest, amortized over a twenty year period, with payments of approximately $1,611 per month due on or before the first day of each consecutive calendar month, and a balloon payment of the entire remaining unpaid balance of principal and interest shall be due and payable on or before the tenth anniversary of this agreement. The first payment shall be due on or before November 1, 1995. [1, 2]

    d. William Payne agrees to pay the outstanding balance due on the 1990 Buick, and to indemnify and hold Charlene harmless for the unpaid balance.

    e. Additional terms are as follows:

- William H. Payne shall have the right to prepay without penalty.

- Charlene will acquire a first position security interest in all property identified on the September 6, 1995 Boller appraisal, which can only be subordinated to a bank for a loan connected with the business.

- In the event William G. Payne sells any of the property identified on the September 6, 1995 appraisal, Charlene G.

---

[1] The final sentence of this provision, or Paragraph "6(c)(2)," was a handwritten interlineation initialed by both William and Charlene.

[2] Although not numbered, the bullet-pointed subparagraphs within Paragraph 6(c) and Paragraph 6(e) of the PSA are referred to herein by their numerical order.

Payne shall be entitled to 30% of the net sale proceeds. (This provision does not apply to the sale of inventory in the ordinary course of business.).

- In the event William H. Payne sells Payne Machinery, Inc., the entire unpaid principal and accrued interest due to Charlene G. Payne must be paid on or before closing of said sale. For purposes of this agreement, a sale of Payne Machinery, Inc. shall be defined as a sale of 50% or more of the assets and/or outstanding stock in Payne Machinery, Inc., or a voluntary or involuntary dissolution or winding up of Payne Machinery, Inc.

. . .

19. Should any action be commenced to enforce, modify, or interpret any provision of this agreement, the Court, as a cost of suit, shall award a reasonable attorney's fee to the successful party.

20. This agreement contains the entire understanding of the parties and there are no representations, warranties, covenants or understandings other than those expressly set forth herein.

¶4 In November 1995, William executed a trust indenture incumbering real property in Lincoln County, naming Charlene as beneficiary for purposes of securing the $225,000 William owed to Charlene under the "installment payment obligation." In 1996, William paid one-third of the proceeds from the sale of four parcels encumbered by the trust indenture to Charlene, and she filed partial satisfactions of judgment with the court and recorded deeds of partial reconveyance with respect to each parcel. The proceeds from the sale of the parcels were not credited toward William's installment payment obligation. The installation payments were paid to Charlene through the Lincoln County Clerk of Court, while the shares of the proceeds from sale of the parcels were distributed to Charlene directly. On November 4, 2001, William completed payment of the installment obligation. Charlene did not file a satisfaction of judgment and did not record a deed of reconveyance

4

for the remaining real property denominated as security in the trust indenture, but on January 29, 2002, recorded a quitclaim deed, executed in November 1995, conveying to William her interest in the land on which Payne Machinery was situated. The parties argue over the intent of the PSA as implied from their actions in these post-dissolution transactions.

¶5 In March 2019, William contracted to sell the assets of Payne Machinery and associated real property for $1,400,000. Charlene filed a Lis Pendens, stating an interest in 30% of the proceeds, to which William objected. The parties agreed the sale could close and the title company would withhold $420,000 of the proceeds until a resolution could be reached.

¶6 Charlene filed a Motion for Order Distributing Sales Proceeds to Petitioner. William opposed the motion, requesting distribution of the disputed funds to himself, and asked for an evidentiary hearing. The District Court, reasoning "this is a question of law and no hearing is needed," issued an Order and Opinion granting Charlene's motion on December 19, 2019. It ordered that Charlene was entitled to 30% of "the net proceeds from the sale of Payne Machinery and the property upon which it is located." On January 3, 2020, William submitted the 1995 Appraisal, as well as numerous other documents, which had not been in the record or considered by the District Court prior to issuance of the Order and Opinion.

¶7 After William filed a Notice of Appeal, Charlene moved the District Court to enter a judgment awarding her costs, attorney fees and interest. Following briefing, the District

Court issued a judgment awarding Charlene $418,945.15 under the PSA, $27,316.80 in interest accrued since the April 1, 2019 sale, and attorney fees. The parties thereafter briefed the amount of attorney fees and filed a stipulation regarding pending claims and motions. The stipulation was adopted by the District Court and, on May 5, 2020, it entered a Judgment and Order setting the attorney fees at $20,441.22, paying $15,000 to Charlene "as a settlement payment incident to outstanding motions," and requiring William to post the amount of $498,358.04, reflecting the judgment and possible accrual of additional interest during this appeal, as security.

¶8    This Court interprets "property settlement agreements associated with marital dissolutions in accordance with the law of contracts." *In re Marriage of Pfennigs*, 1999 MT 250, ¶ 13, 296 Mont. 242, 989 P.2d 327; *see also* § 40-4-201(5), MCA (2019). The construction and interpretation of a contract and whether a provision presents an ambiguity are questions of law subject to de novo review. *Mary J. Baker Revocable Tr. v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 19, 338 Mont. 41, 164 P.3d 851; *Krajacich v. Great Falls Clinic, LLP*, 2012 MT 82, ¶ 13, 364 Mont. 455, 276 P.3d 922.

¶9    William argues the District Court erred by interpreting the PSA as a matter of law and by "fail[ing] to consider the Property Settlement Agreement as a whole and the circumstances of its execution to determine whether an ambiguity exists, which requires extrinsic evidence to determine the parties' intent." He argues that when the agreement is read as a whole, it is "reasonable and appropriate" to interpret Paragraph 6(e) as "not a standalone paragraph," but rather that its sub-parts are related only to the installment

6

payment obligation stated in Paragraph 6(c), and do not state a separate 30% net proceeds obligation. Alternatively, William argues, even if the District Court correctly interpreted the PSA, it erred by "failing to consider the extent to which any property identified on the September 6, 1995 appraisal . . . was included in the 2019 sale of Payne Machinery, Inc. and the property upon which it was located." In response, Charlene argues the PSA is unambiguous and the District Court properly denied William's proffered evidence because it consisted of the subjective views of his divorce attorney. And, even if parts of the PSA would be found to be ambiguous, Charlene argues William performed in accordance with the District Court's rendering of the PSA "on four other occasions."

¶10 Contract interpretation is generally a "four-corner" endeavor and when interpreting a written contract, we ascertain the intention of the parties "'first and foremost' from the writing alone." *State v. Asbeck*, 2003 MT 337, ¶ 18, 318 Mont. 431, 80 P.3d 1272 (quoting *Morning Star Enterprises v. R.H. Grover*, 247 Mont. 105, 111, 805 P.2d 553, 557 (1991)); § 28-3-303, MCA ("[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible"). Contractual terms are not examined in isolation but rather "[t]he whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Section 28-3-202, MCA. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." Section 28-3-401, MCA. Indeed, "the intent of the parties is only looked at when the agreement is not clear on its face." *Bain v. Williams*, 245 Mont. 228, 232, 800 P.2d 693, 695 (1990).

7

¶11 Applying these legal standards of interpretation, we agree with the District Court that the wording of the PSA is unambiguous, and that consideration of extrinsic evidence is inappropriate here. Under the wording of the PSA, we must reject William's rendering of Paragraphs 6(e)(3) and 6(e)(4) as merely available methods by which Charlene could be paid the singular installment obligation. Rather, the wording creates different obligations, and we apply that plain language, in light of the PSA as a whole, as follows.

¶12 The PSA awarded Payne Machinery and associated land to William, but also awarded Charlene an interest in the property. Paragraph 6(e)(3) provides that, in the event William would "sell[] any of the property identified on the September 6, 1995 appraisal," with the exception of inventory sold in the ordinary course of business, Charlene "shall be entitled to" 30% of the net sale proceeds of the sale of those assets. Nothing is mentioned in the provision about applying these 30% sale proceeds as a credit toward William's installment obligation. Thus, the provision creates a separate obligation to Charlene, requiring that she share in the proceeds of the sale of individual assets. As Charlene notes, William's post-dissolution actions regarding proceeds from the sale of other assets were consistent with this plain language. Then, Paragraph 6(e)(4) provides that, upon a sale of the whole business, "the entire unpaid principal and accrued interest" of the installment obligation must be paid in full before closing. No reference to or coordination with Paragraph 6(e)(3) is made, nor is there any specific recognition of the possibility that the installment obligation could otherwise be paid in full or in part by way of Charlene's receipt of 30% of sale proceeds from the sale of individual assets.

8

¶13    However, the District Court's order granting Charlene a blanket "thirty percent (30%) of the net proceeds from the sale of Payne Machinery and the property upon which it is located," fails to incorporate the parameters stated within the plain language of Paragraph 6(e)(3). That provision does not grant Charlene 30% of the net proceeds of Payne Machinery and associated real property as it was constituted at the time of the sale in 2019. Rather, Paragraph 6(e)(3) provides that Charlene is entitled to 30% of the net proceeds of "any of the property identified on the September 6, 1995 appraisal." This is consistent with the purpose expressed in Paragraph 4 of the PSA, which provides that property acquired by the parties after their separation "shall be the sole and separate property of the one so acquiring the same." Thus, William's alternative argument, that even if the District Court correctly interpreted the PSA, it erred by "failing to consider the extent to which any property identified on the September 6, 1995 appraisal . . . was included in the 2019 sale of Payne Machinery, Inc. and the property upon which it was located," is correct. Not only was this issue not considered, but the appraisal itself was not in the record at the time the District Court rendered its decision.

¶14    While the District Court and the parties did not consider the appraisal in the proceedings below, it was made a part of the record after the District Court's Order, and we make several observations. The appraisal was prepared by Rex Boller, CPA. It references several categories of property as associated with Payne Machinery, including shop and improvements, inventory, machinery, automobile, office equipment, computers, goodwill, and land, and valued the property at $719,000. A 1990 Buick is also referenced

9

that could be the same vehicle distributed to Charlene under Paragraph 6(b) of the PSA. Five percent of the ownership of Payne Machinery is listed as being held by "Mark" and "Michael," with 2.5% each, and it would seem apparent that William cannot sell that which is not his. It is not known from the record, as now constituted, whether the post-dissolution land sales in which the parties shared the proceeds were the same land properties listed on the appraisal, so the District Court will need to address this issue upon remand. Some property items are cryptically listed as "considered pre-marriage," but it is uncertain whether this was merely an opinion offered by Boller, or whether the properties were ultimately so treated by the parties and the court upon the dissolution, and a further record will need to be made. The parties may have other issues concerning the provisions of the appraisal.

¶15 William asks that we limit Charlene's award to 30% of the *value* of the property as stated in the 1995 appraisal. However, this is contrary to Paragraph 6(e)(3), which granted Charlene simply "30% of the net proceeds." There is no language tying the percentage to the *valuations* articulated in the appraisal, and thus, Charlene is entitled to an award of proceeds based upon the 2019 sale value. William also asks that Charlene's award be reduced in an amount proportional to the full amount of taxes he paid on the sale proceeds. However, this is a new argument on appeal and we decline to address it as waived. *See, e.g.*, *Mt. W. Bank, N.A. v. Glacier Kitchens, Inc.*, 2012 MT 132, ¶ 13, 365 Mont. 276, 281 P.3d 600 (citation omitted).

10

¶16 Finally, the parties contest costs and attorney fees. Paragraph 19 of the PSA stipulates that "[s]hould any action be commenced to enforce, modify, or interpret any provision of this agreement, the Court, as a cost of suit, shall award a reasonable attorney's fee to the successful party." Each party agrees that the provision is to be given reciprocal effect. William argues that costs are not included within the provision. However, we have previously upheld a district court's determination that an identical clause encompassed both costs and attorney's fees. *In re Marriage of Pearson*, 1998 MT 236, ¶ 66, 291 Mont. 101, 965 P.2d 268; *In re Marriage of Mannix*, 242 Mont. 137, 140, 788 P.2d 1363, 1366 (1990). Further, Charlene's defense of the appeal was necessary for enforcement of the PSA upon William's objection to payment of sale proceeds to her. While William has obtained partial relief from the District Court's Order and Opinion in the form of additional proceedings, Charlene nonetheless remains the successful party for purposes of obtaining attorney fees and costs pursuant to the PSA.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶18 Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.

/S/ JIM RICE

11

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR